609 A.2d 29

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v. RAYMOND VASQUEZ, DEFENDANT-
RESPONDENT.

Argued March 3, 1992—Decided July 22, 1992.

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*J. Michael Blake,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

Defendant entered a plea of guilty to a school zone drug offense for which the Comprehensive Drug Reform Act prescribed a maximum sentence of five years in prison with a parole disqualifier of three years. The parole disqualifier could be waived by the prosecutor. Pursuant to a plea agreement, the prosecutor waived the parole disqualifier and defendant was placed on probation. When defendant later violated the terms of his probation, the prosecutor advised the court that the State would not again waive the period of parole ineligibility. Accordingly, on revoking defendant's probation, the court imposed a three-year period of parole ineligibility.

The central issue in this case, as in *State v. Peters*, 129 *N.J.* 210, 609 *A.*2d 40 (1992), also decided today, is whether on resentencing following a violation of probation the court is compelled by the sentencing statute to impose the period of parole ineligibility and whether the prosecutor, having originally waived the parole disqualifier, has the authority at resentencing to demand the imposition of the period of parole ineligibility.

I

Defendant, Raymond Vasquez, pleaded guilty to possession of cocaine with intent to distribute within 1,000 feet of school property contrary to *N.J.S.A.* 2C:35-7. The plea agreement provided that the three-year parole ineligibility term fixed by *N.J.S.A.* 2C:35-7 (section 7) would be waived according to *N.J.S.A.* 2C:35-12 (section 12) and the court would impose a probationary term. According to the prosecutor at the plea hearing, the agreement provided that "should Mr. Vasquez come back before this court on a violation of probation, the State would not waive at that time the mandatory sentencing provisions of 2C:35-7."

In accordance with the plea agreement, the court sentenced defendant to a five-year probationary term. As conditions of

probation, defendant was to spend 364 days in the county jail and perform 500 hours of community service; he was also assessed a $1,000 Drug Enforcement Demand Reduction penalty, a $50 forensic lab fee, and a $30 Violent Crimes Compensation Board penalty.

Some twenty months later, defendant pleaded guilty to violation of probation by failing to report, failing to complete his community service, and failing to abstain from illegal drug use. Noting that "the period of parole ineligibility was initially waived for the initial plea only," the court imposed a four-year custodial term with three years of parole ineligibility.

Defendant appealed, arguing among other points that section 12, which prevents the court from ameliorating a mandatory sentence without the prosecutor's consent, violates the doctrine of separation of powers and defendant's right to due process of law. Further, defendant contended that the prosecutor could not use the section 12 waiver to circumvent the sentencing guidelines set forth in *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989), and *State v. Molina,* 114 *N.J.* 181, 553 *A.*2d 332 (1989).

The Appellate Division agreed with defendant's contention that he was "entitled to be resentenced on the probation violation in accordance with the standards set forth in *Baylass* and *Molina* and without any mandatory period of parole ineligibility under *N.J.S.A.* 2C:35-7." 250 *N.J.Super.* 457, 461, 595 *A.*2d 520 (App.Div.1991) (citing *State v. Wearing,* 249 *N.J.Super.* 18, 30, 591 *A.*2d 1350 (App.Div.1991) (Cohen, J.A.D., dissenting)).

The Court granted the State's petition for certification, 126 *N.J.* 389, 599 *A.*2d 165 (1991), but denied defendant's cross petition. *Ibid.*

## II

A threshold issue in this case is whether defendant waived his right to appeal by pleading guilty to the school zone offense. The State argues that defendant waived his right to

appeal because he entered a non-conditional guilty plea. The State relies on *State v. Robinson,* 224 *N.J.Super.* 495, 498, 540 *A.*2d 1313 (App.Div.1988), in which the court stated that "[g]enerally, a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea." Had defendant wished to preserve the right to appeal, suggests the State, defendant should have requested the entry of a conditional plea pursuant to *Rule* 3:9–3(f).

The Rule governing conditional pleas is directed to pretrial issues such as the admissibility of statements, pretrial identifications, and sound recordings, although it extends to purely legal questions as well. Sylvia B. Pressler, *Current New Jersey Court Rules, R.* 3:9–3 comment at 555 (1992).

The issue raised by defendant, however, is "addressed to the sentence, not to any question which would otherwise arise before plea or verdict and which is otherwise traditionally waived by a guilty plea." *State v. Carey,* 230 *N.J.Super.* 402, 404 n. 1, 553 *A.*2d 844 (App.Div.1989) (question of propriety of second offender sentence not waived by guilty plea). Here, the appeal concerned sentencing after a violation of probation, and the plea did not amount to a waiver of the defendant's right to appeal the issues addressed to that future proceeding. *State v. Gonzalez,* 254 *N.J.Super.* 300, 303–04, 603 *A.*2d 516 (App.Div. 1992) (addressing issue on appeal because it relates to sentencing); *State v. Santiago,* 253 *N.J.Super.* 197, 200, 601 *A.*2d 714 (App.Div.1991) (same). Otherwise a defendant would have to raise issues concerning a sentence that had not yet been imposed for a violation that had not yet occurred and might never occur. That procedure would be akin to raising a claim that was not yet ripe for judicial review. *See also Gonzalez, supra,* 254 *N.J.Super.* at 304, 603 *A.*2d 516 ("[I]t would be unfair under the circumstances presented to require defendant to forego the benefit of the plea agreement in order to raise this important question. Strict adherence to the requirements of *R.* 3:9–3(f) 'would result in an injustice.' *R.* 1:1–2."); *State v. Todd,* 238 *N.J.Super.* 445, 460, 570 *A.*2d 20 (App.Div.1990)

(despite any deficiency in defendant's failure to press the constitutional arguments before the trial court, court considered the issue).

■ Accordingly, we hold that defendant did not at the time of pleading guilty to the underlying offense waive the right to appeal the prosecutor's attempt to apply the parole ineligibility term to defendant's sentence on violation of his probation.

### III

Defendant argues that because the decision to waive the period of parole ineligibility involves an exercise of discretion by the prosecutor, and the prosecutor's decision purports to bind the sentencing court's power, *N.J.S.A.* 2C:35–12 violates the doctrine of separation of powers. *N.J. Const.* art. III, ¶ 1.

In *State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992), the Court considered a separation of powers challenge to *N.J.S.A.* 2C:43–6f, which requires a court to impose an extended term with a period of parole ineligibility for a repeat drug offender. Although the sentence is mandatory under the statute, whether an extended term is imposed depends upon the prosecutor because section 6f takes effect only on his or her application. As here, defendant asserted that the statute impermissibly delegated judicial sentencing powers to the prosecutor. We reasoned: "As currently written, ... Section 6f, with its lack of any guidelines and absence of any avenue for effective judicial review, would be unconstitutional." *Id.* at 31, 601 *A.*2d 698. To cure the constitutional defect, we "interpret[ed] the statute to require that guidelines be adopted to assist prosecutorial decision-making with respect to applications for enhanced sentences under *N.J.S.A.* 2C:43–6f." *Id.* at 32, 601 *A.*2d 698. To permit effective review of prosecutorial sentencing decisions, prosecutors were required to state on the trial record the reasons for seeking an extended term. *Ibid.* Further, "[t]o protect against ... arbitrary action," the Court held that "an extended term may be denied or vacated where defendant has

established that the prosecutor's decision to seek the enhanced sentence was an arbitrary and capricious exercise of prosecutorial discretion." *Id.* at 33, 601 *A.*2d 698. Defendants "must show clearly and convincingly their entitlement to relief under that standard." *Ibid.*

■ The issue here is similar to that resolved in *Lagares* and we conclude that the same interpretation is appropriate. *State v. Gonzalez, supra,* 254 *N.J.Super.* 300, 603 *A.*2d 516 (applying *Lagares* ruling to section 12); *State v. Todd, supra,* 238 *N.J.Super.* 445, 570 *A.*2d 20 (section 12 did not offend separation of powers principles because despite prosecutor's statutory authority to grant or refuse waiver of mandatory term as part of plea agreement, sentencing court retained ultimate option to decline plea agreement). As in the case with section 6f, section 12 vests sentencing power in the prosecutor. Judicial oversight is mandated to protect against arbitrary and capricious prosecutorial decisions. *State v. Wearing, supra,* 249 *N.J.Super.* at 29, 591 *A.*2d 1350 (Cohen, J.A.D., dissenting) ("courts cannot simply bow to a prosecutor's possibly arbitrary, discriminatory or disproportionate sentencing decision"); *see also Wade v. United States,* 504 *U.S.* ——, ——, 112 *S.Ct.* 1840, 1843, 118 *L.Ed.*2d 524, 531 (1992) ("federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive" or "was not rationally related to any legitimate Government end"). To that end, the prosecutor should state on the record the reasons for the decision to waive or the refusal to waive the parole disqualifier. *See, e.g.,* Report of the Uniform Narcotics Charging and Disposition Working Group, Directive 9.1, at 18–20 (prosecutorial guidelines for section 12 waiver of parole disqualifier) (*Prosecutor's Guidelines*). A defendant who shows clearly and convincingly that the exercise of discretion was arbitrary and capricious would be entitled to relief. Those standards prevent the legislative goal of uniformity in sentencing from being undermined by unreviewable prosecutorial discretion.

So interpreted, the statute does not violate the doctrine of separation of powers, and we reject defendant's contrary contention.

## IV

By statute, the court that resentences a defendant for a violation of probation "may impose on the defendant any sentence that might have been imposed originally for the offense for which he [or she] was convicted." *N.J.S.A.* 2C:45–3b. In this case the provisions that govern the original sentence for the school zone drug offenses are found in sections 7 and 12. Hence, we must examine the sentencing scheme contemplated by those provisions to determine the standards applicable to the determination of an original sentence.

We recently observed that "[t]he school-zone statute is an important feature of New Jersey's Comprehensive Drug Reform Act of 1986, *L.* 1987, *c.* 101, enacted to combat drug use and distribution and reflecting the Legislature's intention to impose heavy penalties on drug offenders." *State v. Dillihay,* 127 *N.J.* 42, 53, 601 *A.*2d 1149 (1992) (citing New Jersey Supreme Court Task Force on Drugs and the Courts, Apr. 1991, at 5). We further observed that "[i]n promulgating the school-zone statute, the Legislature intended to keep school zones drug-free in order that schools can effectively educate children about the dangers of drug use." *Ibid.* (citing Official Commentary to the Comprehensive Drug Reform Act, *L.* 1987, *c.* 106).

Reflecting that intent, the statute imposes strict penalties, including a mandatory sentence, for drug offenses occurring in a school zone. The mandatory sentence statute associated with the school zone offense provides in relevant part:

Any person who violates subsection a. of N.J.S. 2C:35–5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and

> shall, except as provided in N.J.S. 2C:35–12, be sentenced by the court to a term of imprisonment. Where the violation involves less than one ounce of marijuana, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or one year, whichever is greater, during which the defendant shall be ineligible for parole. In all other cases, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or three years, whichever is greater, during which the defendant shall be ineligible for parole. [*N.J.S.A.* 2C:35–7.]

Thus, the section provides for a term of imprisonment with a period of parole ineligibility. Section 12 contains an exception: the mandatory minimum terms can be waived at the option of the prosecutor. That section states:

> Whenever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, or a mandatory extended term which includes a period of parole ineligibility, the court upon conviction shall impose the mandatory sentence unless the defendant has pleaded guilty pursuant to a negotiated agreement or, in cases resulting in trial, the defendant and the prosecution have entered into a post-conviction agreement, which provides for a lesser sentence or period of parole ineligibility. The negotiated plea or post-conviction agreement may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, or a specified period of parole ineligibility, a specified fine, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea or post-conviction agreement. [*N.J.S.A.* 2C:35–12.]

The statute contemplates that the plea agreement can contain all pertinent terms including the prison term. If the plea agreement is accepted by the court, those terms may not be varied. However, the statute also allows the plea agreement to omit terms, leaving the setting of those terms to the discretion of the court. As explained in the legislative commentary to section 12,

> although the State and the defendant under this section are free to stipulate a specific prison term, period of parole ineligibility or fine to be imposed, the plea agreement need not do so. Rather, a plea agreement could remain silent as to any or all such terms and conditions, in which event the court would retain its discretion, subject only to the requirements of this act, to impose any sentence deemed appropriate.
>
> [John M. Cannel, *New Jersey Criminal Code Annotated*, comment *N.J.S.A.* 2C:35–12, at 589 (1992) (quoting 1987 Legislative Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act).]

The State characterizes the sentence authorized by section 7 as a mandatory sentence that reposes no, or extremely limited, discretion in the court because it effectively requires the imposition of a prison term and a parole disqualifier. The State maintains that the mandatory sentence is legislatively prescribed. *See, e.g., State v. Wearing, supra,* 249 *N.J.Super.* at 26 n. 3, 591 *A.*2d 1350 ("the ineligibility term flows from the statutory requirement, not from the exercise of prosecutorial discretion").

█ Mandatory sentences usually allow for no judicial discretion. *See, e.g., State v. Jefimowicz,* 119 *N.J.* 152, 162, 574 *A.*2d 428 (1990) (sentencing standards applicable to discretionary extended terms do not apply to Graves Act because "[t]here is nothing discretionary about this determination"); *State v. Towey,* 114 *N.J.* 69, 80, 82, 552 *A.*2d 994 (1989) (no judicial discretion in mandatory sentencing structure of Graves Act); *State v. Des Marets,* 92 *N.J.* 62, 80, 455 *A.*2d 1074 (1983) (Legislature can limit the judiciary's discretion to sentence by prescribing mandatory minimum terms for offenses committed with firearms). Mandatory sentences ordinarily foreclose prosecutorial discretion as well. For example, prosecutors cannot eliminate or reduce the sentences that are mandatorily prescribed in Graves Act cases through plea bargains. Supreme Court Directive (Apr. 27, 1981) *reprinted in N.J.S.A.* 2C:43–6c.

Section 7's parole disqualifier is *not* absolute—it can be waived at the discretion of the prosecutor. Because the prosecutor can waive the parole disqualifier, section 7 sentencing is not "mandatory," at least in the typical or conventional use of mandatory sentencing. Therefore, the section 7 sentencing scheme is a hybrid, combining mandatory and discretionary features and delegating sentencing authority to both the courts and the prosecutors.

The issue posed in this case is whether the sentencing court is compelled by the standards controlling the sentencing scheme of section 7 and 12 to impose a period of parole ineligibility

when resentencing a defendant following a violation of probation. The question that has been posed by the parties, and framed by the decisions of the lower courts, is whether the court must impose the parole disqualifier of section 7 if the prosecutor refuses at resentencing to waive the parole disqualifier under section 12. Although we prefer to frame the question differently, we answer the question in the negative for two reasons. Once the parole disqualifier prescribed under section 7 is waived, it is no longer "mandatory" for purposes of resentencing for a violation of probation. Further, the prosecutor retains no sentencing authority on resentencing with respect to the imposition of a parole disqualifier.

We construe the statute strictly because it is a penal statute. *Neeld v. Giroux*, 24 *N.J.* 224, 229, 131 *A.*2d 508 (1957); *State v. Brenner*, 132 *N.J.L.* 607, 611, 41 *A.*2d 532 (E. & A.1944). We recognize that when the Legislature chooses to prescribe a mandatory sentence for certain offenses, it is strongly motivated by substantial law enforcement concerns. *State v. Des Marets*, 92 *N.J.* 62, 455 *A.*2d 1074 (1983). Because mandatory sentencing is extraordinary, both the significance of those concerns and the clarity of the Legislature's intent must surround the authorization to affix mandatory sentences. *See State v. Martelli*, 201 *N.J.Super.* 378, 493 *A.*2d 70 (App.Div. 1985) (parole ineligibility is the exception, not the rule, and it should not be treated as routine or commonplace). When that intent and expression are clear and unmistakable, the Court will construe such sentencing schemes to effectuate fully their obvious penal purposes. *See, e.g., State v. Ivory*, 124 *N.J.* 582, 588–89, 592 *A.*2d 205 (1991) (interpreting "school property" and "used for school purposes" strictly to effectuate legislative purpose to create drug safety zones); *State v. White*, 98 *N.J.* 122, 130–31, 484 *A.*2d 691 (1984) (making Graves Act applicable to unarmed accomplice if the accomplice knew or had reason to know that partner would possess or use a firearm to commit the crime); *State v. Stewart*, 96 *N.J.* 596, 604, 477 *A.*2d 300 (1984) ("possession of a firearm for purposes of the Graves Act

includes not only actual possession but constructive possession that the defendant is able to convert practically immediately to actual possession"). If the legislature has not clearly authorized the imposition of mandatory sentences under particular circumstances, the court will not be justified in extending the scope of such sentences. *See, e.g., State v. Weeks,* 107 *N.J.* 396, 405, 526 *A.*2d 1077 (1987) (Graves Act does not apply to unarmed accomplice unless accomplice shared the purpose to commit an armed robbery). The intent of the Legislature and its objectives must be expressed in terms that leave no doubt of the course of action it has authorized in calling for mandatory sentences. *Cf. State v. Cannon,* 128 *N.J.* 546, 568, 608 *A.*2d 34 (1992) (legislative endorsement of executive and judicial modifications of statutory custodial sentencing scheme not clearly expressed).

██ Thus, unless the Legislature has made clear its intent to have the mandatory parole disqualifier apply at violation of probation sentencing, the court is not justified in imputing that intent to the Legislature. We are satisfied that it has not. The mandatory term of section 7 is itself not truly mandatory because it may be waived. Moreover, section 12, which authorizes the waiver of the mandatory term, does so only in the context of the original sentencing. That waiver may occur as part of a plea agreement or a post-conviction sentencing agreement. However, the legislation does not expressly mandate that a parole disqualifier be applied at the resentencing stage or authorize the exercise by the prosecution of any power to waive or request such a parole disqualifier at that stage.

In addition, the imputation of such a mandatory term would be fundamentally inconsistent with the legislative scheme governing resentencing for violation of probation. *See State v. Wearing, supra,* 249 *N.J.Super.* at 30, 591 *A.*2d 1350 (Cohen, J.A.D., dissenting) (the "initial plea only" waiver violates the "letter and spirit" of *Baylass* and *Molina*). The statutory framework for resentencing for violation of probation was

explained by the Court in *State v. Baylass, supra,* 114 *N.J.* 169, 553 *A.*2d 326, and *State v. Molina, supra,* 114 *N.J.* 181, 553 *A.*2d 332. The Court interpreted those standards to promote the Code's policy of uniform sentencing. *Baylass, supra,* 114 *N.J.* at 181, 553 *A.*2d 326. Under those standards, the sentencing court must again conscientiously weigh aggravating and mitigating factors, a process that was comprehensively explained in *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). However, the balance that was struck at the original sentence cannot be fully duplicated at resentencing. The court may not redetermine the aggravating factors. It may consider additional evidence involving post-sentence circumstances, but only as bearing on mitigating factors. Moreover, the court cannot consider the violation of probation itself as an aggravating factor. *Baylass, supra,* 114 *N.J.* at 176, 553 *A.*2d 326. That significant constraint is dictated by the resentencing statute, which makes clear that resentencing is required *because* of the violation of probation, not *for* the violation of probation. *Ibid.; see State v. Ryan,* 86 *N.J.* 1, 8, 429 *A.*2d 332 (1981). Because the legislative framework for resentencing forecloses a redetermination of the aggravating factors that existed at the time of the original school zone drug offense, that a custodial term in excess of the presumptive term will result in most cases is unlikely. Hence, in the absence of express authority we are unable to infer that the Legislature intended to impose an absolute mandatory parole disqualifier on resentencing for a violation of probation based on a school zone drug conviction.

The State contends that the mandatory parole disqualifier applies on resentencing because the prosecutor retains the statutory authority under section 12 to determine whether a parole disqualifier shall be imposed. We find no sufficient basis on which to impute to the Legislature an intent to repose in the prosecutor any greater power than that expressly given by the statute. "There is nothing in the wording of *N.J.S.A.* 2C:35–12 or in the legislative history which suggests that the prosecutor's power to negotiate an agreement resulting in the

waiver of the otherwise mandatory provisions of *N.J.S.A.* 3C:35–7 extends beyond the initial sentencing imposed pursuant to the agreement." *State v. Sepulveda,* 253 *N.J.Super.* 447, 451, 602 *A.*2d 273 (App.Div.1992). The statute does not expressly authorize prosecutors to exercise sentencing authority on resentencing, nor does it specifically authorize prosecutors through either "waiver" or the making of a request to demand that a period of parole disqualification be affixed to the sentence.

Moreover, the imputation of a power in the prosecutor to dictate whether the court shall impose a mandatory period of parole ineligibility on resentencing cannot be found in the authority to engage in plea or sentence negotiations at the original sentence. The prosecutor did not have the power to bargain with a parole ineligibility on violation of probation during the original negotiations. Defendant's acceptance of such a term does not create or transfer such a power to the prosecutor. We reject here the notion that a defendant could agree to divesting a court of its sentencing authority or responsibility, no matter how clear the agreement. *See State v. Warren,* 115 *N.J.* 433, 442, 558 *A.*2d 1312 (1989).

More consistent with our view is the decision in *State v. Sepulveda, supra,* in which the court made the following observation in concluding that "the court is not bound by a plea agreement which attempts to bind it to revoke probation and impose a jail term simply because there has been a violation of probation":

> Ordinarily, a prosecutor cannot, as a part of a plea agreement, dictate what will occur in the event there is a violation of probation. Whether a defendant's violation of probation is sufficiently egregious to warrant revocation of probation is a decision reposed by the Legislature in the courts, not the prosecutor. *See State v. Baylass,* 114 *N.J.* 169 [553 *A.*2d 326] (1989); *N.J.S.A.* 2C:45–3a(4). Moreover, "[o]nce the court determines that the violation justifies revocation of probation, the Code controls the sentencing decision." *State v. Baylass, supra,* 114 *N.J.* at 178 [553 *A.*2d 326]. Thus, to determine the appropriate terms of the resentence, the judge refers to the sentencing scheme provided in the Code for the crime to which defendant originally pled guilty rather than the terms of the sentence agreed upon by defendant in the plea agreement. *State v. Ervin,* 241

N.J.Super. 458, 465–70 [575 A.2d 491] (App.Div.1989). [253 N.J.Super. at 451–52, 602 A.2d 273.]

The delegation of sentencing power to the prosecutor is itself exceptional. *State v. Warren, supra,* 115 *N.J.* 433, 558 *A.*2d 1312. The delegation of sentencing power to modify statutory sentencing standards is highly unusual. *See Lagares, supra,* 127 *N.J.* at 28, 30–31, 601 *A.*2d 698. The power in the prosecutor directly or indirectly to *mandate* a minimum prison term is extraordinary. To impute such a power in the prosecutor we would be required to conclude that without that authority the unmistakable legislative purpose would be frustrated. The legislative purpose in authorizing the prosecutor to waive the mandatory prison term for school zone drug offenses clearly tempered the professed legislative goal to impose severe and inflexible sanctions for those offenses. The Legislature obviously concluded that concerns of law enforcement in combating the scourge of drug criminality, particularly as it threatens children, could be relevant in the context of the sentencing of certain drug offenders. "One of the key objectives of [section 12] and of the act is to provide persons engaged in illicit drug activities with strong incentives to cooperate with law enforcement to overcome the perceived and substantial risks associated with turning State's evidence and exposing their superiors, suppliers and affiliates." John M. Cannel, *New Jersey Criminal Code Annotated,* Legislative Comment to *N.J.S.A.* 2C:35–12 (1992). Section 12 "is intended to recognize that many drug offenders are part of a complex distribution chain and to facilitate and encourage offenders to cooperate with law enforcement efforts to detect, apprehend and successfully prosecute otherwise well-insulated drug traffickers." *Id.,* Legislative Comment to *N.J.S.A.* 2C:35–1.

The law enforcement purpose of securing a defendant's cooperation, however, is one that is effectuated primarily at the time of the original sentence. Thus, the prosecutor at that time may decide that law enforcement objectives to be realized by the defendant's cooperation may outweigh the Code's general sen-

tencing goals of uniformity and the specific legislative goal of deterrence in these cases. That calculus, however, no longer applies after a defendant has violated probation. The law enforcement objective to be realized through defendant's cooperation will have in many cases become moot. As observed by Judge Cohen in his dissent in *State v. Wearing, supra,* 249 *N.J.Super.* at 30, 591 *A.*2d 1350: "The grant or withholding of waiver at initial sentencing exhausts any legitimate law enforcement purpose for which the prosecutor is given the *N.J.S.A.* 2C:35–12 authority. Those law enforcement purposes are not revived by a probation violation."

We thus determine that on the resentencing of a defendant for a violation of probation, the Legislature did not intend to require the imposition of a mandatory term of parole ineligibility or to authorize the prosecutor to demand or waive the imposition of a term of parole ineligibility. The question that remains is what standards govern the imposition of a sentence under section 7 following a violation of probation. We conclude that the court must follow the general standards governing resentencing for violation of probation in accordance with *Baylass,* subject, however, to a discretionary authority to impose a period of parole ineligibility under appropriate circumstances and based on adequate findings.

██ As earlier mentioned, *Baylass* and *Molina* provide the basic framework to implement the Code's overall sentencing scheme when sentencing for a violation of probation. The guidelines recognize first that sentencing, whether at the original sentencing or at subsequent time, is offense oriented. *State v. Baylass, supra,* 114 *N.J.* at 172, 553 *A.*2d 326. On resentencing, the court may again need to determine whether the presumptive sentence or range applies, whether to impose a period of parole ineligibility, and whether the sentences should run concurrently or consecutively. In making those determinations, the violation of probation cannot be considered as an aggravating factor. *Id.* at 175, 553 *A.*2d 326. The violation

may affect the mitigating factors, however, because the violation itself may reflect on the defendant's ability to lead a law-abiding life and the likelihood that the defendant will respond affirmatively to probationary treatment. *Ibid.* Accordingly, in imposing sentence following a violation of probation, the court should consider and balance only those aggravating and mitigating factors that existed at the time of the initial sentencing, except as the mitigating factors only may have been modified by the violation of probation. That weighing can remove or reduce the weight originally ascribed to mitigating factors, and may, therefore, alter the balance that at the original sentence justified the decision not to impose the presumptive custodial term. *Id.* at 178, 553 *A.*2d 326. However, because of the constraint against recalculating the aggravating factors, only in "a rare case [will] the balance of the original aggravating factors and surviving mitigating factors weigh in favor of a term of imprisonment greater than the presumptive sentence or of a period of parole ineligibility." *Ibid.*

■ Hence, the sentencing court, following a violation of probation, cannot return to a sentence more stringent than was appropriate originally except in the rare case. Nonetheless, although we reject the State's position that on resentencing for violation of probation the imposition of a period of parole ineligibility is mandatory in the absence of the prosecutor's waiver, we hold that a period of parole ineligibility may be imposed in conjunction with the imposition of a presumptive custodial term as a matter of judicial discretion.

In resentencing cases involving school zone drug offenses, one mitigating factor in particular can be sentence-determinative. The Legislature contemplated that the defendant's cooperation with the State could constitute a significant basis for both the plea agreement and the prosecutor's decision to waive the parole disqualifier and the court's determination to accept the plea agreement and impose a probationary term. *See* Cannel, *supra* (Legislative purpose of section 12 was to encour-

age drug offenders to turn's State's evidence). That legislative purpose is embodied in the enumerated mitigating factors at *N.J.S.A.* 2C:44–1b(12) ("The willingness of the defendant to cooperate with law enforcement authorities"). In many of these cases, that mitigating factor will have been given very substantial weight at original sentencing, evidenced by the fact that the court accepted the plea, which included the prosecutor's waiver of the mandatory parole disqualifier. *Prosecutor's Guidelines, supra,* at 18 (cooperation by defendant is primary reason for invoking section 12's waiver); *cf.* Department of Law and Public Safety Division of Criminal Justice, *A Law Enforcement Response to Certain Criticisms of the Comprehensive Drug Reform Act* (Sept. 17, 1990), at 25, 27, 31 (section 12 waiver provides safety valve to make certain defendants have an incentive to plead guilty even if defendant does not cooperate with a law enforcement investigation). Moreover, the prosecutor will have been required to explain the basis for the waiver as part of the plea agreement. *See supra* at 194–95. If post-sentence circumstances surrounding the violation of probation demonstrate that that mitigating factor was improperly determined and weighed because defendant did not in fact cooperate, then the court may exercise its discretion to reassess that mitigating factor.

In eliminating that mitigating factor, or reducing its weight, the court should be mindful of its importance in relation to the legislative purpose of section 7: "to afford special protection to children from the perils of drug trafficking [and] to ensure that all schools and [adjacent] areas ... are kept free from drug distribution activities." *N.J.S.A.* 2C:35–1.1c. The legislative policy of section 12 in delegating authority to the prosecutor to waive the mandatory parole disqualifier was to allow legitimate law enforcement concerns to enter into the sentencing calculus. Thus, removal from the scale of the cooperation mitigating factor can affect the assessment of the aggravating factors and remaining mitigating factors at the time of the defendant's resentencing. The Court may in that setting determine that the

exercise of sound sentencing discretion requires the imposition of a period of parole ineligibility with a presumptive term.

We recognize that that result—that the court on resentencing could impose a presumptive term and also a period of parole disqualification—appears incongruous. A similar incongruity arose in *State v. Kruse*, 105 *N.J.* 354, 521 *A.*2d 836 (1987). The Court resolved the apparent incongruity by observing that the length of the sentence and the period of parole ineligibility are "separate facets of the sentencing decision, and each independently reflects the exercise of judicial discretion." *Id.* at 362, 521 *A.*2d 836. Thus, we held that "in certain limited situations, a court may impose a period of parole ineligibility in conjunction with a presumptive sentence." *Id.* at 361, 521 *A.*2d 836. The Court specifically mentioned a plea agreement as an acceptable "limited situation."

In comparing this case to *Kruse* we do not suggest that a prosecutor could overcome our holding today merely by interjecting into the plea agreement a term that if the defendant violates probation, the sentence on revocation of probation would include a period of parole ineligibility. Unlike the situation in *Kruse*, in which the oddity concerned the determinations made at the time of original sentencing, this case involves two separate stages, the original sentencing and the violation of probation sentencing. Although in *Kruse* the prosecutor may have had legitimate powers to bargain with a period of parole ineligibility in combination with a presumptive term, here the prosecutor's powers do not extend to the violation of probation setting. The prosecutor's legitimate powers, both to bargain with the defendant and to influence the court's decision, are exhausted at the time of original sentencing. Thus, we expressly disapprove those Appellate Division opinions that suggest that the plea agreement, if express, could determine the result of resentencing. *E.g., State v. Wearing, supra,* 249 *N.J.Super.* at 26, 591 *A.*2d 1350.

Further, our holding does not rest on whether the defendant received notice at the original sentencing. We reject the distinction advanced by several Appellate Division decisions in which the propriety of the "initial plea only" waiver practice turns on whether the defendant was informed and understood that the violation of probation could result in a mandatory minimum. *E.g., State v. Quijano,* 250 *N.J.Super.* 564, 595 *A.*2d 1102 (App.Div.1991). That position derives from due process concerns and focuses on whether the defendant had notice of the "initial purposes only" condition and whether the defendant understood the consequences of the plea included the application of the mandatory provisions in the event of a violation of probation. *See, e.g., State v. Kovack,* 91 *N.J.* 476, 479, 453 *A.*2d 521 (1982); *State v. Ervin,* 241 *N.J.Super.* 458, 470, 575 *A.*2d 491 (App.Div.1989).

In sum, sections 7 and 12 do not compel the imposition of a mandatory period of parole disqualification with respect to the resentencing of a defendant because of the violation of probation. Nevertheless, the sentencing scheme applicable to school zone drug offenders does not preclude the imposition of a period of parole disqualification in conjunction with a sentence following violation of probation. That, however, is a matter of sound judicial discretion to be exercised in appropriate cases based on adequate reasons.

## V

In this case the trial court did not undertake the requisite weighing, instead it imposed the parole disqualifier as if it were a required element of the resentence. The Appellate Division instructed the trial court to resentence without the parole disqualifier. In this case we have not addressed the factors that will be material in connection with the resentencing determination. The record does not fully inform us of the circumstances surrounding the crimes nor does it suggest that the mitigating factor involving cooperation with the State was

actually determined to be applicable by the trial court at the original sentence as part of the recommended plea bargain. Those circumstances would have a bearing on whether a sound exercise of sentencing discretion would warrant the imposition of a parole disqualifier.

It is clear, however, that the trial court on resentencing for defendant's violation of probation felt compelled to impose a parole disqualifier because it believed that the parole disqualifier was mandatory and had not been otherwise waived by the prosecutor. As a result, the court concluded it had no discretion to vary the parole disqualifier, and it did not undertake the appropriate balancing of factors. Therefore, we remand for the trial court's reconsideration of the appropriate sentence.

The judgment of the Appellate Division is affirmed. The sentence for violation of probation is vacated. We remand to the trial court for resentencing consistent with this opinion.

*For Affirmance; Remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.