674 A.2d 192

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. IN
THE INTEREST OF D.S., JUVENILE–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. IN
THE INTEREST OF D.Z., JUVENILE–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. IN
THE INTEREST OF F.C., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 28, 1996—Decided April 16, 1996.

414

Before PETRELLA, P.G. LEVY and EICHEN, JJ.

*Michael P. Koribanics* argued the cause for appellant D.S. in A-3857-94T2 (*Koribanics & Koribanics*, attorneys; *Michael P. Koribanics*, on the brief).

*Ernest M. Caposela* argued the cause for appellant D.Z. in A-4110-94T2 (*Ernest M. Caposela*, attorney; *Mr. Caposela* and *Raymond N. Torres, Jr.*, on the brief).

*Andrew J. Blair* argued the cause for appellant F.C. in A-4508-94T2.

*Robert H. Corrado*, Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava*, Passaic County Prosecutor; *Mr. Corrado*, of counsel, and on the brief).

PER CURIAM.

In these consolidated appeals, the juvenile-appellants D.S., D.Z., and F.C. (collectively "the juveniles") appeal from the denial of the State's motion for modification of their dispositions pursuant to *R.* 3:21–10(b)(3) and *R.* 5:24–6,[1] asserting that the judge was required under their plea agreements to reduce their dispositions (also referred to as sentences). For the following reasons, we affirm the judge's decision to deny the motion for modification of the juveniles' dispositions.

This appeal stems from the murder of a seventeen-year-old male by five of his supposed friends, including the aforementioned juveniles, another juvenile, defendant James Wanger, who was tried and convicted of murder as an adult, and adult defendant Frank Castaldo, who was convicted of murder. The group, after planning and attempting to murder the victim on three prior occasions, finally killed the victim on the fourth occasion. Although the specific facts of the murder are not directly relevant to this appeal, we note that the murder was conducted in a very heinous fashion where the alleged friends, relying on the victim's trust, brought the victim to the parking lot of a school and strangled him while he was told to recite the "Hail Mary" prayer.

Wanger, who actually strangled the victim with an electrical cord, and Castaldo, the group's leader, were tried and convicted as adults with the aid of testimony given by the juveniles pursuant to their respective plea agreements. In return for their testifying, the juveniles were promised under the plea agreement that they

---

[1] The *Rules of Criminal Practice and Procedure* apply to "juvenile delinquency proceedings in the Chancery Division, Family Part, except as otherwise provided for in Part V [*R.* 5:1 *et seq.*]." Sentences in juvenile proceedings are referred to as dispositions, *see R.* 5:24, and references to the sentencing of the juveniles in the plea agreement and by the parties is deemed to be to the dispositions.

would not be tried as adults and that the State, following the prosecution of Wanger and Castaldo, would move the court to resentence the juveniles, recommending that D.S. and F.K. be resentenced to a term of twelve years and that D.Z. be resentenced to a term of fifteen years. The relevant portions of the plea agreement read as follows:

4. Each juvenile has already given one or more sworn statements in this matter. *In return for truthful cooperation already given and in return for each juvenile's agreement to cooperate truthfully and fully in the future, the State will not seek to prosecute [F.C.], [D.Z.], or [D.S.] as adults* for their participation in the murder of [the victim].

5. The State agrees to move for the dismissal of aggravated arson and tampering with physical evidence charges pending against [F.C.] arising out of this matter. *If [F.C.], [D.Z.], and/or [D.S.] give truthful and complete cooperation in the future* regarding the prosecution of the murder of [the victim] then *the State will file no additional charges related to the murder* of [the victim] against that juvenile or those juveniles who give truthful and complete cooperation in the future regarding the prosecution of the murder of [the victim].

6. *Since it is not feasible to postpone the sentencing of [F.C.], [D.Z.], and [D.S.] indefinitely* while the prosecution of James P. Wanger and Frank Castaldo is pending, *the State will ask the Family Court to sentence [F.C.], [D.Z.], and [D.S.] without delay.* The State will urge the Family Court to sentence [F.C.], [D.Z.], and [D.S.] to be incarcerated *for 20 years* in a suitable institution maintained by the Department of Corrections for the rehabilitation of delinquents. *At the time of sentencing, the State agrees to advise the sentencing judge* and the New Jersey State Parole Board *that, if, after being sentenced, [F.C.], [D.Z.], and/or [D.S.] give truthful and complete cooperation in the* prosecution of the matter *of the murder* of [the victim] *the State will move that each juvenile* who gave truthful and complete cooperation *be resentenced by the Family Court based upon any future truthful and complete cooperation which each may have given.*

7. *If [F.C.], [D.Z.], and/or [D.S]* are resentenced based upon their future truthful and complete cooperation with the State, *then the State will advise the Family Court of the extent of each juvenile's cooperation. Furthermore, the State will request that [F.C.], [D.Z.], and/or [D.S.] receive a specific term at the time of resentencing. The State will recommend that [F.C.] and [D.S.] be resentenced to a term of 12 years and [D.Z.] to a term of 15 years* [2] in a suitable institution maintained by the Department of Corrections for the rehabilitation of delinquents.

---

2 The chief assistant prosecutor involved in the prosecutions of Wanger and Castaldo stated that in his opinion the two primary reasons for D.Z. being requested to serve a greater term than D.S. and F.C. was because D.Z. was considerably older (seventeen years of age) than D.S. and F.C. (fourteen years of

8. *The State agrees that, if after being sentenced, [F.C.], [D.Z.], and/or [D.S.] give truthful and complete cooperation in the prosection of the matter of the murder of [the victim], the State will move that each juvenile who gave truthful and complete cooperation be resentenced by the Family Court. . . .* [Emphasis added.]

The plea agreement was accepted by the juveniles, each of whom was represented by counsel, and by the court at the disposition hearing. The agreement was signed by the juveniles, their attorneys, and the State before it was presented to the judge.

In court, on the record, and prior to each juvenile voluntarily and knowingly acknowledging his plea to what would have been murder had he been charged as an adult, the agreement was read aloud in its entirety. Each juvenile was told that he could ask questions regarding anything not understood and was asked whether he understood and freely and willingly accepted the plea, to which each responded in the affirmative. The judge then questioned each juvenile whether there were any additional or secret agreements made, to which each answered in the negative. In addition, the judge explained to the juveniles that he would not be bound by the State's subsequent recommendation for a reduction in their dispositions. The judge had each juvenile's attorney elicit from the juvenile the requisite factual basis for pleading guilty to what would have been a violation of *N.J.S.A.* 2C:11–3(a)(1), if they had been tried as adults.

At the disposition hearing, the State noted that if the juveniles truthfully and completely cooperated in the prosecutions against Wanger and Castaldo, it would move the court to resentence them to specific terms. Prior to imposing the dispositions, the judge again stated that he was "not bound by [the plea] agreement at [the] time of disposition" and that "any applications made in the future are that, . . . applications." The judge elaborated that he did not have to "agree to those applications, only that the parties

age) were at the time of the incident and because D.Z. had a greater degree of involvement in the crime than had D.S. or F.C.

have a right to make [those] application[s] for the purpose of consideration by this Court." The judge then reviewed the aggravating and mitigating factors and sentenced each juvenile to twenty years in a juvenile detention center.

Approximately three years later, the State, pursuant to the plea agreement, filed a motion for a "reduction in sentence." *See R.* 3:21–10(b)(3); R. 5:24–6. During the hearing, the chief assistant prosecutor who conducted the prosecutions of Wanger and Castaldo stated that he believed the juveniles' expected their dispositions to be reduced to the terms specified in the plea agreement. Nonetheless, he also said he believed that the judge's statement at the disposition proceedings, to the effect that the judge had discretion in determining whether to grant any future application for a reduction in the juveniles' dispositions and would not be bound by the State's recommendation, applied to each of the juveniles.

During oral argument, the State acknowledged that the court had "clearly advised each juvenile that [it] would consider the State's promise to seek reduced sentences in return for their truthful testimony; however, the Court would do what it felt was right and not be bound by the State's recommendation. The State's promise would be just that; a promise to seek a reduction in sentence, but [the court] would make the final decision."

In his decision, the judge again asserted that, as evidenced by his prior comments, he was not bound by the plea agreement regarding his discretion in modifying the dispositions of the juveniles. The judge stated he had "explained to all defense counsel that there was no guarantee ... and made it clear on the record, and all the juvenile defendants knew that and the prosecutor knew that." The judge conveyed his reason for making the statement on the record, that he "had to consider what was in the best interest of the community, what was in the best interest of the public ...." After noting the mitigating and aggravating factors he previously had weighed in his disposition decision and review-

ing the documents submitted, the judge denied a reduction of the juveniles' dispositions.

On appeal, the juveniles essentially argue that the judge was required to reduce their dispositions pursuant to the plea agreement and that, alternatively, the judge abused his discretion in not reducing them. The State basically supports the juveniles' arguments. Under the facts of this case, we reject these arguments as without merit, R. 2:11–3(e)(2), and add only the following comments.

The arguments in this case for disposition modification essentially turn on the resolution of two issues: whether the disposition judge had the discretion, despite the plea agreement, to deny the motion for a downward modification of the juveniles' dispositions; and, if so, whether he abused his discretion in denying that motion.

Under our separation of powers doctrine, a prosecutor, as a member of the executive branch,[3] plays a limited role in the sentencing of a defendant, generally having only the authority to control a defendant's exposure to sentencing by deciding the charges the State will prosecute. *State v. Lagares,* 127 *N.J.* 20, 27, 601 *A.*2d 698 (1992). Determining the specific sentence or disposition of a defendant or a juvenile, however, is within the sole discretion of the judge, subject to applicable statute or court rule.[4]

---

[3] The executive branch also has the authority to reduce, alter, or vacate entirely a defendant's judicially imposed time of incarceration through the parole system and the Governor's pardon power. *State v. Lagares,* 127 *N.J.* 20, 27, 601 *A.*2d 698 (1992).

[4] In a few instances, the Legislature has curtailed the court's discretion, *see State v. Lagares, supra,* 127 *N.J.* at 28, 601 *A.*2d 698 (referring to *N.J.S.A.* 2C:43–6c, "Graves Act," and *N.J.S.A.* 2C:14–6, for repeat sex offenders), and the prosecutor has been given limited sentencing discretion. *See, e.g., State v. Bridges,* 131 *N.J.* 402, 621 *A.*2d 1 (1993); *State v. Vasquez,* 129 *N.J.* 189, 196, 609 *A.*2d 29 (1992); *Lagares, supra,* 127 *N.J.* 20, 601 *A.*2d 698; *State v. Leslie,* 269 *N.J.Super.* 78, 82–83, 634 *A.*2d 572 (App.Div.), *certif. denied,* 136 *N.J.* 29, 641 *A.*2d 1040 (1994); *see also State v. Daniels,* 276 *N.J.Super.* 483, 487–488, 648

*N.J. Const.* art. III, ¶ 1; *State in Interest of R.M.,* 141 *N.J.* 434, 452, 661 *A.*2d 1277 (1995); *State in Interest of J.L.A.,* 136 *N.J.* 370, 374, 376–377, 643 *A.*2d 538 (1994); *see State v. Lagares, supra,* 127 *N.J.* at 27–28, 601 A.2d 698; *State v. Warren,* 115 *N.J.* 433, 447, 449, 558 *A.*2d 1312 (1989); *see also State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). This is true irrespective of a plea agreement entered into by the State and defendant as a juvenile. *State v. Taylor,* 49 *N.J.* 440, 455, 231 *A.*2d 212 (1967) (stating that although plea negotiation is between prosecutor and defendant, prosecutor may not "commit the sentencing judge to any particular sentence or action[;]" rather, "prosecutor's function ... is strictly limited to an agreement to recommend a form of leniency, to which recommendation the court in its discretion after being made aware of the full situation would give due consideration"); *State v. Kovack,* 91 *N.J.* 476, 484, 453 *A.*2d 521 (1982) ("Neither party can bind the court; neither has an absolute right to have the sentence conform to the specific terms of the agreement."). *See also State v. Lagares, supra,* 127 *N.J.* at 28, 601 *A.*2d 698; *State v. Sainz,* 107 *N.J.* 283, 292–293, 526 *A.*2d 1015 (1987).

■ In addition, the New Jersey Court Rules pertaining to plea agreements follow this distribution of power. *R.* 3:9–2; 3:9–3(a); *see also R.* 3:9–3(c) (noting that parties may request court to state "maximum sentence it would impose in the event the defendant enters a plea of guilty" based upon information present). It is clear, therefore, that the court alone has the discretion to sentence, or resentence for that matter, a defendant. The same principles apply to juvenile proceedings, except where the rules specifically provide otherwise. *See State in Interest of J.R.,* 244 *N.J.Super.* 630, 637–638, 583 *A.*2d 376 (App.Div.1990).

In the present case, the plea agreement properly reflects the distribution of authority regarding the dispositions of the juve-

---

*A.*2d 266 (App.Div.1994) (commenting on *Vasquez* and *Lagares* ), *certif. denied,* 139 *N.J.* 443, 655 *A.*2d 446 (1995). The instant appeal, however, does not involve such a situation.

niles. As within its power, the State agreed to dismiss other charges pending against F.C. and not to prosecute the juveniles as adults. Further, the State agreed to "move" that the juveniles' dispositions be reduced (in effect that the dispositions be modified) and to "recommend" that F.C. and D.S. be resentenced to twelve years and D.Z. to fifteen years. The State did not, as it could not, encroach upon the sentencing power of the court. Further, the State conceded that it did not have the authority to guarantee such a reduction and had not made such a guarantee.[5] Moreover, the judge was never asked to indicate a maximum disposition that he would impose upon the juveniles on the State's subsequent motion, *see R.* 3:9–3(c); thus, the judge did not bind himself to resentence the juveniles to any specific term. Rather, the judge affirmatively stated that he would not be bound by any of the State's recommendations.

The plea agreements in this case were knowingly and voluntarily accepted by the juveniles, the State and the judge. The record clearly reveals the voluntary nature of the plea agreements and that a sufficient factual basis was established for each juvenile. The record also indicates that the juveniles understood the nature of the crime. They admitted that they had contributed to the murder of the victim. The consequence of the charge, a maximum disposition of twenty years, obviously was known by all parties as it was delineated in the plea agreement. It was the maximum disposition permitted under the Code of Juvenile Justice, *N.J.S.A.* 2A:4A–44d. *Cf. R.* 3:9–2; *State v. Warren, supra,* 115 *N.J.* at 442–443, 447, 558 *A.*2d 1312; *State v. Taylor, supra,* 80 *N.J.* at 353, 403

---

[5] The State concedes that it "could only make non-binding sentence recommendations to the court, and that the Court had advised [each] juvenile that it was not bound by the State's specific sentence reduction requests." In an affidavit, an assistant prosecutor said:

> [O]nly the judiciary has the authority to sentence or resentence criminal defendants while the prosecutor can only make non-binding recommendations to the court. The juveniles herein were advised that the State would recommend reduced sentences if the juveniles fully cooperated but that the court would not be bound by such [a] recommendation.

*A.*2d 889; *State v. Deutsch,* 34 *N.J.* 190, 201, 168 *A.*2d 12 (1961); *State v. Salentre,* 242 *N.J.Super.* 108, 110–111, 576 *A.*2d 36 (App.Div.1990).

Once accepted, the terms of the plea agreement "must be meticulously adhered to, and [the] defendant's reasonable expectations generated by plea negotiations should be accorded deference." *State v. Brockington,* 140 *N.J.Super.* 422, 427, 356 *A.*2d 430 (App.Div.), *certif. denied,* 71 *N.J.* 345, 364 *A.*2d 1077, *cert. denied,* 429 *U.S.* 940, 97 *S.Ct.* 357, 50 *L.Ed.*2d 310 (1976); *see Santobello v. New York,* 404 *U.S.* 257, 92 *S.Ct.* 495, 30 *L. Ed.*2d 427 (1971); *State v. Kovack, supra,* 91 *N.J.* at 483, 453 *A.*2d 521; *State v. Taylor, supra,* 80 *N.J.* at 364, 403 *A.*2d 889; *State v. Marzolf,* 79 *N.J.* 167, 183, 398 *A.*2d 849 (1979); *State v. Salentre, supra,* 242 *N.J.Super.* at 111, 576 *A.*2d 36; *State v. Rodriguez,* 179 *N.J.Super.* 129, 135, 430 *A.*2d 957 (App.Div.1981); *see also State v. Thomas,* 61 *N.J.* 314, 322, 294 *A.*2d 57 (1972) ("Only if it is generally believed that performance on the part of the State will not disappoint a defendant's reasonable expectation will plea bargaining become and remain a truly effective device in criminal administration.").

In the present case: (1) the judge did not sentence the juveniles to a term exceeding the twenty year maximum; (2) the State did not seek to prosecute the juveniles as adults and did not file any additional charges against F.C.; and, (3) the State did move for reduction in the dispositions, did advise the court of the juveniles' cooperation, and did recommend that F.C. and D.S. be resentenced to twelve year terms and D.Z. to a fifteen year term. The agreement was meticulously followed by the State and the court. The remaining issue, therefore, is whether the juveniles' "reasonable expectations" under the plea agreement were frustrated.

Where a defendant or juvenile is not afforded his or her "reasonable expectations, . . . [he or she] should be permitted to withdraw the plea." *State v. Marzolf, supra,* 79 *N.J.* at 183, 398 *A.*2d 849; *see State v. Warren, supra,* 115 *N.J.* at 437, 442–444, 558 *A.*2d 1312 (defendant may withdraw plea if sentence imposed

is "more severe than that recommended by the prosecutor," but State does not have reciprocal right); *R.* 3:9–3(e) ("If at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel or by imposing disposition in accordance with the court's previous indications of disposition, the court may vacate the plea or the defendant shall be permitted to withdraw the plea."); *see also State v. Howard,* 110 *N.J.* 113, 123, 539 *A.*2d 1203 (1988); *State v. Malave,* 249 *N.J.Super.* 559, 562–563, 592 *A.*2d 1231 (App.Div.1991), *certif. denied,* 127 *N.J.* 559, 606 *A.*2d 370 (1992). As explained in *State v. Marzolf, supra,* 79 *N.J.* at 183, 398 *A.*2d 849:

> There is a difference, however, between expectations reasonably grounded in the terms of the plea bargain and wishful thinking. Defendants frequently plea bargain in the hope of receiving a lesser sentence. That their wishes are not fulfilled, however, will not automatically invalidate the plea. *See Brady v. United States,* 397 *U.S.* 742, 90 *S.Ct.* 1463, 25 *L.Ed.*2d 7474 (1970). This depends upon whether the terms of the plea agreement have been honored and whether the lesser sentence was reasonably to be anticipated from the plea bargain. *See State v. Jackson,* [138 *N.J.Super.* 431, 351 *A.*2d 371 (App.Div.1976).]

Here, the juveniles' expectations of a modification of their dispositions amounted to a hope, and any expectations of the inevitability of that result were not reasonable under the circumstances. The plea agreement specifically provides that the State will "*move* that each juvenile . . . be resentenced[,]" "*request* that [the juveniles] receive a specific term[,]" and "*recommend* that [F.C.] and [D.S.] be resentenced to a term of 12 years and [D.Z.] to a term of 15 years." (Emphasis added). Neither the agreement nor the judge's plea acceptance suggests that the juveniles would be guaranteed dispositions modified to the specific terms recommended by the State.

In addition, all the juveniles were represented by attorneys who reviewed the plea agreement before they advised their respective clients to sign and accept it. As previously noted, the State may only "recommend" a disposition to the court; it is "not empowered to negotiate a sentence that can have any binding

effect." *State v. Warren, supra,* 115 *N.J.* at 442, 558 *A.*2d 1312. The juveniles' position that the State's "recommendation" guaranteed a reduction in their dispositions is nothing short of wishful thinking and is not a reasonable expectation in light of the clear language of the plea agreement.

Moreover, the judge questioned the juveniles regarding their understanding that the State's "recommendation" was not binding upon him on a future motion for a reduction in their dispositions. The juveniles expressed their understanding of this fact.[6] The judge also reiterated this fact during the disposition hearing. Had the juveniles, their respective attorneys, or the State believed this interpretation to be incorrect, they would and should have disputed the judge's comment, withdrawn their pleas, or couched them in different terms. Accordingly, under the facts of this case, the juveniles' expectations that the judge was bound by the State's recommendation unquestionably was not "reasonable." *See, e.g., State v. Warren, supra,* 115 *N.J.* at 444–445, 558 *A.*2d 1312; *State v. Marzolf, supra,* 79 *N.J.* at 184, 398 *A.*2d 849; *State v. Rodriguez, supra,* 179 *N.J.Super.* at 136, 430 *A.*2d 957; *State v. Jackson, supra,* 138 *N.J.Super.* at 434–435, 351 *A.*2d 371. *But cf. State v. Nichols,* 71 *N.J.* 358, 361, 365 *A.*2d 467 (1976); *State v. Jones,* 66 *N.J.* 524, 525–526, 333 *A.*2d 529 (1975).

Finally, in light of the record, we conclude that the judge did not abuse his discretion by denying the motion for modification (reduction in disposition) made pursuant to *R.* 3:21–10(b)(3). Under the circumstances, there was insufficient "good cause" shown to support a reduction in the juveniles' dispositions. *See* Pressler,

---

6 The fact that the judge only questioned the first two of the three juveniles is not dispositive. All three were present while each was accepting the plea agreement. They all were aware of the judge's position regarding the State's recommendation. Moreover, the judge specifically explained to the third juvenile during the initial disposition hearing that he would not be bound by the State's recommendation on a subsequent motion. Further, the State and two prosecutors acknowledged that all the juveniles were aware that the recommendation was not binding upon the judge.

*Current N.J. Court Rules,* comment 2 on *R.* 3:21–10(b)(3) (1995); *Report of the N.J. Supreme Court's Committee on Criminal Practice,* 98 *N.J.L.J.,* April 17, 1975, at 24; *see also State v. Tully,* 148 *N.J.Super.* 558, 565, 372 *A.*2d 1323 (App.Div.), *certif. denied,* 75 *N.J.* 9, 379 *A.*2d 240 (1977).

The judge gave due consideration to the record, the aggravating and mitigating factors enumerated at the initial disposition hearing, the gravity of the offense, the participation of the juveniles, and the lack of remorse evidenced by statements provided in the evaluations undertaken while the juveniles were incarcerated. In weighing these factors, the judge rendered a decision he found to be in the "best interest of the community, . . . the best interest of the public . . . ." We have no warrant to disturb the judge's exercise of discretion. *Cf. State v. McDermott,* 175 *N.J.Super.* 334, 340, 418 *A.*2d 1287 (App.Div.1980) (finding materials, indicating that defendant had performed well in institutional setting and had achieved rehabilitation, are irrelevant in showing "good cause" under *N.J.S.A.* 2C:1–1d(2)), *certif. denied,* 87 *N.J.* 332, 434 *A.*2d 80 (1981).

Affirmed.