**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1497-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ARTHUR F. WILDGOOSE,
a/k/a ARTHUR WILDGOOSE,

      Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **August 19, 2024** |
| **APPELLATE DIVISION** |

Argued June 5, 2024 – Decided August 19, 2024

Before Judges Firko, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 16-03-0148.

James H. Maynard argued the cause for appellant (Maynard Law Office, LLC, attorneys; James H. Maynard, of counsel and on the briefs).

Mercedes N. Robertson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Mercedes N. Robertson, of counsel and on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

This appeal presents a question of first impression under the Jessica Lunsford Act[1] (JLA), L. 2014, c. 7, § 1 (codified at N.J.S.A. 2C:14-2). The JLA prescribes a mandatory twenty-five-year sentence for aggravated sexual assault of a child under the age of thirteen. The mandatory minimum sentence can be reduced by up to ten years, but only by the prosecutor through a plea agreement. A judge, moreover, may not impose a prison term less than the one agreed to by the prosecutor.

To ensure statewide uniformity, the JLA required the Attorney General to issue guidelines channeling the exercise of prosecutorial discretion in making plea offers. See Off. of the Att'y Gen., Uniform Plea Negotiation Guidelines to Implement the [JLA], P.L. 2014, c. 7 (2014) [hereinafter Guidelines or JLA Guidelines], https://www.nj.gov/oag/dcj/agguide/lunsford_act.pdf. The Guidelines employ a graduated system differentiating between pre- and post-indictment plea offers. Prosecutors are expressly prohibited from tendering the most lenient plea offer allowed under the JLA—a ten-year sentence reduction—once a defendant is indicted. The question of first impression raised in this appeal is whether the graduated plea provision in the Guidelines violates a defendant's

_____

[1] The JLA is named after a nine-year-old Florida girl who was kidnapped, sexually assaulted, and murdered by a registered sex offender.

constitutional rights when the prosecutor chooses to tender the initial plea offer after indictment, thereby automatically foreclosing a ten-year sentence reduction.

In State v. A.T.C., the Supreme Court upheld the JLA and Attorney General Guidelines against a facial constitutional challenge, subject to an important condition. 239 N.J. 450, 475 (2019). The Court held prosecutors must provide a statement of reasons explaining their decision to offer a defendant a reduced term of imprisonment. Ibid. That requirement is designed to ensure statewide uniformity and facilitate judicial review to guard against the arbitrary or capricious exercise of prosecutorial discretion. Id. at 473, 475.

The Court in A.T.C. had no occasion, however, to address the constitutionality of the Guidelines' graduated plea provision at issue in this appeal since the defendant in A.T.C. waived his right to indictment. Following the analytical template and remedy devised in A.T.C., we uphold the constitutionality of the graduated plea feature subject to a condition: when a prosecutor elects to tender the initial plea offer after indictment, the statement of reasons required by A.T.C. should include an explanation for the timing of the plea offer or else an explanation that the graduated plea provision had no impact on the sentence reduction authorized by the plea offer. When a

prosecutor chooses by the timing of the plea offer to automatically preclude the maximum ten-year sentence reduction, the rationale for that decision should be part of the statement of reasons required by A.T.C. for the decision to offer a prison term "between fifteen and twenty-five years." Id. at 475.

Defendant Arthur F. Wildgoose appeals from a December 7, 2022 Law Division order denying his petition for post-conviction relief (PCR). He was charged with endangering the welfare of a child and aggravated sexual assault of a twelve-year-old. Defendant rejected the State's plea offer, which was tendered after indictment, and was convicted by a jury on both counts. He now challenges the graduated plea provision of the Guidelines, claiming it imposes an impermissible "indictment penalty," violating due process, the right to the effective assistance of counsel, and the right under the doctrine of fundamental fairness to a plea offer that is not arbitrary and capricious.

We conclude that defendant's PCR petition establishes a prima facie case for limited relief in the form of further factfinding by the PCR judge. We remand for the prosecutor to provide a statement explaining the reason for not tendering a pre-indictment plea offer, and for the PCR judge to review that explanation to determine if the prosecutor's decision constitutes an arbitrary or capricious exercise of prosecutorial discretion resulting in prejudice to defendant.

A-1497-22

In all other respects, we reject defendant's constitutional arguments.

I.

We discern the following pertinent facts[2] and procedural history from the record. Defendant met C.P.[3] in 2015. C.P. has three daughters, including B.P. Around October 2015, when B.P. was twelve years old, she and defendant began texting. Defendant eventually asked B.P. to be his girlfriend, and B.P. said yes. He called her "beautiful," told her he loved her, missed her, and wanted to see her more. Defendant told B.P. not to tell anyone about their relationship.

In November 2015, defendant slept at C.P.'s home. As stated in our prior opinion, B.P. testified that defendant "pulled her from the air mattress onto the futon with him and vaginally penetrated her." The next month B.P. "approached her mother visibly upset and crying" and told her defendant "took her virginity."

In March 2016, defendant was charged by indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and third-degree

---

[2] The circumstances of the sexual crime defendant committed against the twelve-year-old victim are more fully recounted in our opinion affirming defendant's trial conviction. State v. Wildgoose, No. A-2303-17 (App. Div. Dec. 24, 2018).

[3] We use initials to identify the child and her mother to preserve the confidentiality of the victim. R. 1:38-3(c)(12).

A-1497-22

endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Following indictment, the prosecutor tendered an initial plea offer of twenty-five years in state prison with a parole ineligibility period of eighteen years. Defendant rejected the State's offer and the case proceeded to trial.

A jury trial was held in May 2017. The jury found defendant guilty of both counts. On January 11, 2018, the trial judge sentenced defendant on the aggravated sexual assault conviction to a thirty-year prison term with a twenty-five-year period of parole ineligibility. The judge sentenced defendant on the child endangerment conviction to a five-year prison term to run concurrently with the aggravated sexual assault sentence. The judge further imposed parole supervision for life, N.J.S.A. 2C:43-6.4, ordered defendant to abide by the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, and entered a sex offender restraining order.

Defendant filed a direct appeal in which he challenged the date of the indictment and the jury instructions. He also claimed prosecutorial misconduct. On December 24, 2018, we affirmed the convictions, Wildgoose, slip op. at 1, and on July 11, 2019, the Supreme Court denied defendant's petition for certification. State v. Wildgoose, 238 N.J. 479 (2019).

On February 4, 2021, defendant filed the present PCR petition, alleging the Guidelines violate due process, constructively deny the right to the

assistance of counsel, and violate the doctrine of fundamental fairness. After hearing oral argument, the PCR judge denied defendant's petition on December 7, 2022, rendering a twenty-seven-page written opinion.

This appeal follows. Defendant raises the following contentions for our consideration:

> POINT I
>
> [DEFENDANT'S] PCR CHALLENGE TO THE CONSTITUTIONALITY OF THE INDICTMENT PENALTY PROVISION OF THE ATTORNEY GENERAL GUIDELINES IS NOT PROCEDURALLY BARRED BY R[ULE] 3:22-4.
>
> POINT II
>
> THE INDICTMENT PENALTY OF THE ATTORNEY GENERAL GUIDELINES AUTOMATICALLY INCREASES THE MINIMUM POST-INDICTMENT PLEA OFFER AVAILABLE TO THE DEFENDANT AND THUS VIOLATES FUNDAMENTAL FAIRNESS.
>
> A. The Fundamental Premise Underlying Plea Bargaining Is A "Mutuality of Advantage," Which Benefits Both The Defendant And State And Sustains Its Constitutionality.
>
> B. Imposing The Indictment Penalty On Defendants Who Never Received And Rejected A Pre-Indictment Plea Offer Is Fundamentally Unfair.
>
> C. The Lower Court Misstated [Defendant's] Legal Argument, And Thus Engaged In An Erroneous Legal Analysis.

1. [Defendant] Does Not Argue That The State Must Extend A Pre-Indictment Plea Offer, Only That [Defendant] Should Not Be Penalized When The Only Offer Made Is Post-Indictment.

2. [Defendant] Does Not Argue That The Plea Offers Must Consider The Interests Of The Defendant, But Rather Argues That The Automatic[] Escalation Of Plea Offers Fails To Consider The Victim's Interests.

3. The Case Law Authorizing Escalating Plea Offers Relied Upon By The Trial Court Is Distinguishable From The Indictment Penalty In A Manner That Renders It Arbitrary And Fundamentally Unfair.

   POINT III

   THE INDICTMENT PENALTY OF THE ATTORNEY GENERAL GUIDELINES AUTOMATICALLY INCREASES THE MINIMUM POST-INDICTMENT PLEA OFFER AVAILABLE TO THE DEFENDANT AND THEREFORE, IS ARBITRARY AND VIOLATES PROCEDURAL DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTION[S].

A. The Indictment Penalty Is Arbitrary And Thus Violates Procedural Due Process.

B. The Indictment Penalty Imposes A Penalty Without Due Process of Law.

C. Imposing the Indictment Penalty Prior To Providing The Defense With Discovery Defeats The Purpose Of The [Fifteen]-Year Plea Offer.

D. Penal Laws Must Be Strictly Construed Against The State.

8

E. The Trial Court Erred In Finding That [Defendant's] Due Process Rights Were Not Violated By The Attorney General Guidelines.

F. Conclusion.

POINT IV

THE INDICTMENT PENALTY OF THE ATTORNEY GENERAL GUIDELINES DEPRIVES DEFENSE COUNSEL OF THE ABILITY TO EFFECTIVELY ARGUE FOR THE MIN[IM]UM PLEA OFFER AVAILABLE PRE-INDICTMENT, AND THUS CONSTITUTES CONSTRUCTIVE DENIAL OF ASSISTANCE OF COUNSEL.

A. Where A Defendant Has Suffered Constructive Denial Of The Assistance Of Counsel, Prejudice Is Presumed.

B. Defendants Are Entitled To Effective Assistance Of Counsel At All Stages Of A Criminal Prosecution, Including In Plea Negotiations.

C. The Right Of Access To The State's Discovery Is Central To The Principle Of Due Process And Effective Assistance of Counsel.

D. The Denial Of Discovery Establishes An Administrative Procedure Not Contemplated By Law That Results In The Constructive Denial Of The Assistance Of Counsel.

E. The Trial Court Erred In Finding No Constructive Denial Of Effective Assistance Of Counsel.

F. [Defendant's] Proposed Remedy To The Constructive Denial Of Effective Assistance Of Counsel, Which Is Caused By The Attorney General Guidelines, Advances The Purpose Of The [JLA] Without Imposing An Undue Burden On The State.

9

Defendant raises the following contentions in his reply brief:

POINT I

DEFENDANT'S PCR CLAIMS ARE NOT BARRED.

POINT II

THE "INDICTMENT PENALTY" OF THE ATTORNEY GENERAL GUIDELINES IS ARBITRARILY IMPOSED ON DEFENDANTS.

POINT III

THE ATTORNEY GENERAL GUIDELINES ARE CONTRARY TO THE STATUTORY LANGUAGE OF THE [JLA] AND VIOLATE THE [JLA'S] LEGISLATIVE PURPOSE AND INTENT.

A. The Attorney General Guidelines Restrict Prosecutorial Discretion In Plea Negotiations In A Manner That Thwarts The Statutory Language And Purpose Of The [JLA.]

B. No Provision Of The Attorney General Guidelines Authorizes Negotiating A Reduction In The Term Of Imprisonment In Exchange For A Guilty Plea.

C. The Attorney General Guidelines Are Mandatory And Authorize No Deviation From Its Requirements.

D. The 25/15 Year Plea Offer And 25/18 Year Plea Offer Authorized By The Attorney General Guidelines Violate The No Early Release Act.

POINT IV

ACTIONS OF THE EXECUTIVE BRANCH THAT CONFLICT WITH EXPLICIT STATUTORY

PROVISIONS, ARE ARBITRARY AND VIOLATE FUNDAMENTAL FAIRNESS.

A. State Departments And Agencies Must Conform Their Polices And Procedures To The Authorizing Language Of Legislatively Enacted Statutes.

B. The Attorney General Guidelines Narrow The Scope Of The [JLA] In Violation Of The Express Language Of The Statute.

C. A Government Agency's Arbitrary Actions Violate Fundamental Fairness.

D. The Indictment Penalty Deprives Defendants Of The "Mutuality Of Advantage" That Otherwise Justifies The Plea Bargaining Process.

E. The Indictment Penalty Arbitrarily Treats Defendants Differently Based On How They Are Charged With An Offense.

F. The Attorney General Guidelines Deprive Both Defendants And Victims The Relief Authorized By Statute.

POINT V

THE INDICTMENT PENALTY CONSTITUTES CONSTRUCTIVE DENIAL OF ASSISTANCE OF COUNSEL

A. The State Argues That The Court Rules Preclude Discovery Pre-Indictment Or Pre-Plea Offer.

B. Requiring Defense Counsel To Posit A "Material Change in Circumstances" To Obtain The 25/15 Year Plea Offer Vitiates The Relatively Equal Bargaining Power Of The State And Defendant.

11

C. Without Access To Discovery Pre-Indic[t]ment, Defense Counsel Cannot Advocate For Why a 25/15 Year Plea Offer Would Be In Victim's Interests.

D. Elimination Of The Indictment Penalty Would Be Consistent With The Legislative Purpose And Intent For Enacting The [JLA.]

## II.

We first address the State's contention defendant's PCR petition is procedurally barred because he failed to raise the constitutional challenge to the JLA and Guidelines on direct appeal. The PCR judge stated in the penultimate paragraph of her written opinion:

> The [c]ourt further agrees with the State in that the defendant is procedurally barred from raising any challenges to his sentence under R[ule] 3:22-4 as these contentions could have and should have been raised at an earlier proceeding. The State correctly points out that petitions for [PCR] are not "a substitute for appeal from conviction." State v. Goodwin, 173 N.J. 583, 594 (2002). Defendant was aware of the JLA Guidelines at all times during the evolution of this matter, and, further, was certainly aware of the State's decision to not extend a pre-indictment offer at the time of his appeal. Defendant failed to raise this challenge at an earlier proceeding and is thus barred from making the challenge at this time.

Although the judge ultimately found that the procedural bar applies, she had already addressed, and rejected, defendant's constitutional contentions on their merits. For the following reasons, we too choose to reach defendant's constitutional arguments.

12

As the PCR judge aptly noted, a PCR claim is not a substitute for an appeal from conviction. R. 3:22-3; see Goodwin, 173 N.J. at 593 ("[A] defendant may not employ [PCR] to assert a new claim that could have been raised on direct appeal . . . . "). In State v. Echols, 199 N.J. 344, 357 (2009), the Court stated that "[a]lthough [the] rules provide for certain exceptions . . . [it had previously] emphasized that it is important to adhere to [the] procedural bars."

Under Rule 3:22-4, a defendant is barred from raising any issue in a PCR petition that could have been raised on direct appeal unless one of three enumerated exceptions apply. See State v. Nash, 212 N.J. 518, 546 (2013). Specifically, the Rule provides:

> Any ground for relief not raised in the proceedings resulting in the conviction, . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the [PCR] hearing finds:
>
> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or
>
> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

[R. 3:22-4(a).]

The Rule explains with respect to the first enumerated subsection, "[a] ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-4(a).

The PCR judge focused on the first exception. We agree with the judge that defendant was aware of the factual predicate for his current constitutional claims well before he filed his direct appeal. The Guidelines were promulgated in May 2014 and defense counsel certainly was aware that he received neither pre-indictment discovery nor a pre-indictment plea offer from the prosecutor.[4] Based on that factual predicate, nothing precluded defendant's counsel at either the trial court level or on direct appeal from challenging the prosecutor's decision to forego making a pre-indictment offer on the constitutional grounds defendant now raises for the first time in his PCR petition. Accordingly, defendant has failed to establish the exception codified in Rule 3:22-4(a)(1).

---

[4] Pursuant to Rule 3:13-3(a), the State's obligation to provide pre-indictment discovery is triggered when the prosecutor has made a pre-indictment plea offer. Unless and until a pre-indictment plea offer is tendered, the State is under no obligation to provide discovery before the return of an indictment except as may be required under Rule 3:4A and Rule 3:4-2(c)(2) in connection with a motion for pretrial detention.

That determination, however, does not conclude our analysis of the State's procedural bar contention. We next consider the second exception set forth in the Rule, which applies when "enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice." R. 3:22-4(a)(2). Unlike the exceptions codified in Rule 3:22-4(a)(1) and (3), the Rule does not provide a separate paragraph to explain and amplify the fundamental injustice exception. We therefore must look to caselaw for guidance.

In Nash, our Supreme Court explained "[t]he second exception turns on the definition of 'fundamental injustice,'" noting "[o]ur courts will find fundamental injustice when the judicial system has denied a 'defendant with fair proceedings leading to a just outcome.'" 212 N.J. at 546 (quoting State v. Mitchell, 126 N.J. 565, 587 (1992)). The Court added that "[t]o succeed on a fundamental injustice claim," the PCR petitioner "must make 'some showing' that an error or violation 'played a role in the determination of guilt.'" Id. at 547 (quoting Mitchell, 126 N.J. at 587).

In State v. Martini, the Court provided further instruction on the fundamental injustice exception, noting "[o]ur procedural rules seek to achieve 'the important state goals of finality and judicial economy.'" 187 N.J. 469, 481 (2006) (quoting State v. Preciose, 129 N.J. 451, 474 (1992)). "Even so," the

15

Court added, "we must strike 'a balance between the competing interests of finality of judgments and fundamental fairness.'" Ibid. (quoting State v. Marshall, 173 N.J. 343, 354 (2002)).

The Court acknowledged there is no bright-line test to determine when a PCR court should apply the fundamental-injustice exception but noted that it had previously declared that "[i]n defining fundamental injustice, the courts will look to whether the judicial system has provided the defendant with fair proceedings leading to a just outcome. 'Fundamental injustice' will be found if the prosecution or the judiciary abused the process under which the defendant was convicted . . . ." Ibid. (quoting Mitchell, 126 N.J. at 587). We deem it particularly instructive the Martini Court added, "'we generally have declined to read the exceptions to Rule 3:22-4 narrowly.'" Ibid. (quoting Preciose, 129 N.J. at 476).

In Martini, the defendant challenged the jury instructions for the first time in his PCR petition. Id. at 482. The Court noted that "[a]lthough a review of the entire charge causes us to disagree with [the] defendant's assertions, [the] defendant has pointed to a flaw in our [M]odel [J]ury [C]harge that must be corrected." Ibid. "Under these circumstances," the Court concluded, "we find 'that enforcement of the bar [against considering issues that were not raised in a prior proceeding] would result in fundamental

16

injustice.'  Therefore, we address the merits of defendant's claim and do not apply the procedural bar of the Rule."  Ibid. (alteration in original) (quoting R. 3:22-4).

We next apply these foundational principles to defendant's newly minted PCR contentions.  At the risk of putting the cart before the proverbial horse, we are satisfied that the JLA and Guidelines as applied to defendant could have denied him "'fair proceedings leading to a just outcome,'" Nash, 212 N.J. at 546, if the prosecutor had acted arbitrarily or capriciously in choosing to withhold a pre-indictment plea and that decision influenced the sentence reduction contemplated in the plea offer.  A violation of the separation of powers doctrine resulting in a less favorable plea offer than one defendant otherwise would have received, if proved, would constitute a fundamental injustice for purposes of the exception to the procedural bar.  See State v. Brimage, 153 N.J. 1, 27 (1998) (finding the plea negotiation system for certain drug cases violated the separation of powers doctrine, affording the defendant the option of vacating or renegotiating his guilty plea).

Consider, by way of example, that if a prosecutor refrains from giving a pre-indictment plea offer for the purpose of rendering the defendant ineligible for the full sentence reduction permitted under the JLA, any such ulterior purpose might constitute an arbitrary and capricious manipulation of the

17

Guidelines. So too, if a prosecutor's office has a policy not to tender pre-indictment plea offers in JLA cases, that circumstance would presumptively violate our State's separation of powers jurisprudence, which precludes county-specific policies, standards, and procedures that might result in "inter-county disparity."

As we explain in part D of Section V, we cannot know whether the prosecutor in this case acted arbitrarily or capriciously, as defendant contends, until the prosecutor explains the reasons for tendering the initial plea offer after defendant was indicted. Nor can we discern from the present record whether the prosecutor would have tendered the same initial plea offer even if it had been made pre-indictment, in which event defendant would have suffered no prejudice for purposes of PCR analysis. Cf. Lafler v. Cooper, 566 U.S. 156, 163 (2012) (noting in an ineffective assistance of counsel case, "defendant must show the outcome of the plea process would have been different with competent advice"). Furthermore, defendant may have "pointed to a flaw" in the JLA Guidelines, see Martini, 187 N.J. at 482, or at least to a gap in our separation-of-powers jurisprudence that warrants attention in view of the constitutional analysis and remedy developed in A.T.C.

In these circumstances, we are satisfied defendant has made "some showing" that the Guidelines' graduated plea feature raises constitutional

concerns.  See Nash, 212 N.J. at 547.  Accordingly, like our Supreme Court in Martini and the PCR judge in this case, we choose to address defendant's constitutional claims on their merits notwithstanding they could have been raised on direct appeal.

III.

We preface our analysis of defendant's constitutional arguments by acknowledging the foundational legal principles governing PCR appeals.  PCR serves the same function as a federal writ of habeas corpus.  Preciose, 129 N.J. at 459.  When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief.  Ibid.  To sustain this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision."  Mitchell, 126 N.J. at 579.

Rule 3:22-2 specifies the grounds on which PCR relief is cognizable, including "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey."  R. 3:22-2(a).  Here, defendant challenges the Guidelines' graduated plea policy based on several constitutional theories, including violation of his right to due process, his right to the effective assistance of counsel, and his

19

right under the doctrine of fundamental fairness to a plea offer that was not arbitrary and capricious.

Short of obtaining immediate relief in the form of vacating a conviction, an evidentiary hearing may be warranted to develop the factual record. See Preciose, 129 N.J. at 462. An evidentiary hearing is required, for example, when "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)).

IV.

The gravamen of defendant's PCR petition is that defendant "should not be penalized when the only offer made is [p]ost-[i]ndictment." Although defendant posits several constitutional theories to support his PCR petition, only one finds support in case law as to warrant a fulsome discussion. See R. 2:11-3(e)(2).

We need only briefly address defendant's argument the Guidelines graduated plea provision violates due process. That argument presupposes there is a constitutional right to a plea offer. It fails because there is no such

right.  As we held in <u>State v. Williams</u>, "a defendant has no legal entitlement to compel a plea offer or a plea bargain" because "the decision whether to engage in such bargaining rests with the prosecutor."  277 N.J. Super. 40, 46 (App. Div. 1994).

Relatedly, defendant's due process rights were not violated by the <u>Rule</u> that requires the prosecutor to provide pre-indictment discovery only when a pre-indictment plea offer is made.  <u>R.</u> 3:13-3(a).  This was not a situation where defendant was forced to decide whether to accept or reject a plea offer before receiving discovery from the State.

We likewise are unpersuaded by defendant's claim he was "constructively" deprived the right to the assistance of counsel because his attorney had no opportunity to pursue negotiations for the maximum sentence reduction permitted under the JLA.  Defendant does not claim in his PCR petition that his trial counsel rendered ineffective assistance by failing to challenge the prosecutor's decision to forego tendering a pre-indictment plea offer.  Rather, the gist of his right-to-counsel argument is that the JLA and Guidelines neutralized the role of his attorney as an advocate by effectively precluding counsel from arguing for a more lenient plea offer than would be allowed under the Guidelines for a post-indictment offer.

Defendant contends "[t]he constructive denial of counsel arises because it precludes counsel from reviewing and analyzing the discovery prior to the post-indictment plea escalation, and thus deprives counsel of the evidence and information he needs to present an argument as to why the [fifteen]-year [p]lea [o]ffer is in the victim's interests." We decline to rewrite the Rules of Court promulgated by the Supreme Court to require pre-indictment discovery regardless of whether a plea offer has been tendered.

Defendant's "constructive denial of counsel" theory suffers from the same basic problem as his procedural due process argument, namely, there is no constitutional right to a pre-indictment plea offer. We nonetheless acknowledge that a defendant's right to effective assistance of counsel extends to the plea negotiation process. See Missouri v. Frye, 566 U.S. 134, 140 (2012). For example, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 566 U.S. at 168.

We likewise accept that a defendant has a right to have his counsel advocate on his behalf for the most favorable plea deal possible. Indeed, given the prevalence of negotiated guilty pleas—which account for the vast majority of convictions—it is axiomatic that the assistance of counsel during the plea

negotiation process is no less important than assistance rendered during a jury trial.

It is our understanding that plea negotiations routinely begin before indictment, notwithstanding defendant's claim that without discovery, defense counsel is "a lawyer attempting to practice in the dark." But we are aware of no case interpreting the Sixth Amendment of the United States Constitution or its analogue, Article I, Paragraph 10 of the New Jersey Constitution, that recognizes a right to advocate for a particular plea offer the prosecutor is unable or unwilling to make. And certainly, the right to the assistance of counsel does not somehow authorize a plea agreement that is precluded by the JLA or the Guidelines. Thus, we are not prepared to extend the Sixth Amendment and Article I, Paragraph 10 to suggest that the Guidelines' graduated plea provision constructively deprives a defendant of the right to the assistance of counsel.

Relatedly, the right to the effective assistance of counsel under the Sixth Amendment and its state constitutional counterpart does not provide a constitutional foundation for reviewing the exercise of prosecutorial discretion, which is what this appeal turns on. We thus decline on the present facts to conceptually expand the right to counsel as defendant proposes, especially

23

since another argument is better tailored to address defendant's concerns with respect to the constitutionality of the JLA and Guidelines.

V.

That brings us to defendant's argument that the Guidelines' graduated plea provision leads to arbitrariness and "disparity between county prosecutors based on varying internal practices about when to initiate plea negotiations, how to charge (by complaint/warrant, accusation or direct presentment to a grand jury), and when to provide discovery to the defendant." He further argued to the PCR court that the Guidelines "bypass judicial review by requiring the State to place on the record reasons for offering an [eighteen]-year plea offer but not requiring the State to explain why it did not make a [fifteen]-year plea offer." To address these arguments, we closely examine the relevant text of the JLA and the graduated plea offer provision of the Guidelines, applying the analytical framework spelled out in A.T.C.

A.

The JLA imposes significantly enhanced punishment on offenders convicted of aggravated sexual assault when the victim is less than thirteen years old. Specifically, the JLA provides,

> [e]xcept as otherwise provided in subsection d. of this section, a person convicted under paragraph (1) of this subsection shall be sentenced to a specific term of years which shall be fixed by the court and shall be

24

between 25 years and life imprisonment of which the person shall serve 25 years before being eligible for parole, unless a longer term of parole ineligibility is otherwise provided pursuant to this Title.

[N.J.S.A. 2C:14-2(a).]

The JLA further provides,

[n]otwithstanding the provisions of subsection a. of this section, where a defendant is charged with a violation under paragraph (1) of subsection a. of this section, the prosecutor, in consideration of the interests of the victim, may offer a negotiated plea agreement in which the defendant would be sentenced to a specific term of imprisonment of not less than [fifteen] years, during which the defendant shall not be eligible for parole. In such event, the court may accept the negotiated plea agreement and upon such conviction shall impose the term of imprisonment and period of parole ineligibility as provided for in the plea agreement, and may not impose a lesser term of imprisonment or parole or a lesser period of parole ineligibility than that expressly provided in the plea agreement. The Attorney General shall develop guidelines to ensure the uniform exercise of discretion in making determinations regarding a negotiated reduction in the term of imprisonment and period of parole ineligibility set forth in subsection a. of this section.

[N.J.S.A. 2C:14-2(d).]

Pursuant to the statutory mandate, the Attorney General issued the Guidelines for use in all JLA cases prosecuted by the county prosecutors and the Division of Criminal Justice. Defendant's constitutional challenge hinges on

Section 3 of the Guidelines, entitled "Maximum ([ten]-year) Reduction for Pre-Indictment Plea Offer."  That section reads:

> In order to provide the greatest possible incentive for a defendant to plead guilty as expeditiously as possible and before the expenditure of significant judicial and prosecutorial resources, the prosecutor may offer a plea agreement providing for a [fifteen]-year term of parole ineligibility (i.e., the maximum allowable reduction) only if the defendant agrees to plead guilty before indictment.  Any such pre-indictment plea offer shall expire automatically upon the return of an indictment.  After indictment a prosecutor shall not offer a plea agreement providing for a term of parole ineligibility less than [eighteen] years (a three-year minimum increase as required by Section 4) unless the County Prosecutor, or Director of the Division of Criminal Justice in cases prosecuted by the Division, determines in writing that there has been a material change in circumstances that, considering the factors listed in Section 1, justifies a post-indictment plea offer that provides for a term of parole ineligibility between [fifteen] and [eighteen] years.

## B.

As we have noted, the JLA precludes a sentencing court from "impos[ing] a lesser term of imprisonment or parole or a lesser period of parole ineligibility than that expressly provided in the plea agreement."  N.J.S.A. 2C:14-2(d).  This feature raises inherent constitutional concerns under the separation of powers doctrine.  That doctrine is "designed to 'maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of

26

unchecked power in the hands of any one branch.'" Commc'ns Workers of Am. AFL-CIO v. Florio, 130 N.J. 439, 449 (1992) (quoting David v. Vesta Co., 45 N.J. 301, 326 (1965)).

In the context of criminal cases, our Supreme Court in State v. Lagares acknowledged that the sentencing function "does not fit neatly within a single branch of government." 127 N.J. 20, 27 (1992). That said, as a general matter, sentencing discretion typically resides with the judge. With respect to most crimes, moreover, the trial court in the exercise of reasoned discretion may impose a sentence less than the one recommended in a plea agreement. See State v. Warren, 115 N.J. 433, 449 (1989).

The JLA departs from that traditional framework, instead following the approach used in the Comprehensive Drug Reform Act of 1987 (CDRA), N.J.S.A. 2C:35-1 to -36A-1, which allows prosecutors to reduce or waive a mandatory minimum sentence and precludes judges from imposing a lesser term of imprisonment than that expressly provided under the terms of a plea agreement. See N.J.S.A. 2C:35-12. In Brimage, the Court commented that this "shift in sentencing power from the judiciary to the prosecutor" is both "uncommon" and "extraordinary." 153 N.J. at 9-10. The Court upheld the constitutionality of N.J.S.A. 2C:35-12, but forbade county-specific policies, standards, or procedures that might result in "intercounty disparity." Id. at 22-

27

23. The Court also directed the Attorney General to issue guidelines[5] that all counties must follow to ensure statewide uniformity by channeling the exercise of prosecutorial discretion. Id. at 24-25.

Like the JLA Guidelines, the Brimage Guidelines "firmly embrace the concept of a graduated or 'escalating' plea policy . . . ." Brimage Guidelines, § 4.2. But there are significant differences between the graduated plea policy in the Brimage Guidelines and the JLA Guideline provision challenged in this appeal. Most notably, the Brimage Guidelines avoid an "indictment penalty," to borrow defendant's characterization. Section 4.5 of the Brimage Guidelines, entitled "The Functional Equivalent of Pre-Indictment Offer," provides in pertinent part:

> [T]o ensure statewide uniformity as required by [Brimage, 153 N.J. at 1], where there is no pre-indictment case disposition program, or in any case where the prosecutor for any reason other than the defendant's fugitive status does not tender a plea offer prior to the return of an indictment . . . , the prosecutor will be required pursuant to these Guidelines to tender the applicable "pre-indictment" plea offer, notwithstanding that the defendant has already been indicted . . . .

---

[5] Brimage Guidelines 2 (2004 Revisions): Revised Attorney General Guidelines for Negotiating Cases under N.J.S.A. 2C:35-12 (2004) [hereinafter Brimage Guidelines], https://www.state.nj.us/lps/dcj/agguide/directives/brimage_all.pdf.

28

C.

We next turn our attention to the Supreme Court's decision in A.T.C., which addressed a facial constitutional challenge to the JLA and Guidelines. 239 N.J. at 455. Pursuant to a plea agreement, the defendant in A.T.C. waived his right to indictment and "pled guilty to an accusation charging him with first-degree sexual assault of a child under thirteen" and second-degree endangering the welfare of a child by distributing child pornography. Id. at 457. The plea agreement called for a sentence of twenty years imprisonment and twenty years parole ineligibility. Ibid. After his guilty plea, but before the scheduled sentencing date, the defendant moved to modify his sentence. Id. at 458. His motion was predicated in part on his contention that "the JLA contravenes the separation of powers doctrine by vesting in the prosecutor sentencing authority constitutionally delegated to the judiciary." Ibid.

After canvassing the constitutional challenges brought under the CDRA, the A.T.C. Court derived "three core principles":

> First, the Attorney General must promulgate uniform statewide guidelines designed to channel that [prosecutorial] discretion and minimize sentencing disparity between counties, taking into account the legislative objective in the sentencing statute. Brimage, 153 N.J. at 23; [State v. Vasquez, 129 N.J. 189, 195 (1992)]; [Lagares, 127 at 31-32].
>
> Second, in order to facilitate effective judicial review, the prosecutor must provide a written statement

of reasons for his or her exercise of prosecutorial discretion. Brimage, 153 N.J. at 25; Vasquez, 129 N.J. at 196; Lagares, 127 N.J. at 32.

Third, the sentencing court maintains oversight to ensure that prosecutorial discretion is not exercised in an arbitrary and capricious manner. Vasquez, 129 N.J. at 195-96; Lagares, 127 N.J. at 33.

[A.T.C., 239 N.J. at 473-74.]

"Those three procedural safeguards" the Court reasoned, "allow for effective judicial review of the prosecutor's exercise of discretion granted by the Legislature, thus satisfying separation of powers principles." Id. at 474.

Applying those core principles, the A.T.C. Court upheld the constitutionality of the JLA Guidelines with a significant qualification: the Court held "[t]he JLA Guidelines should be amended to instruct prosecutors to provide the sentencing court with a statement of reasons for a decision to offer a defendant, in a plea agreement, a term of incarceration or a term of parole ineligibility between fifteen and twenty-five years." Id. at 475. Such a statement of reasons, the Court stressed, "is essential to effective judicial review for the arbitrary and capricious exercise of prosecutorial discretion under N.J.S.A. 2C:14-2(d)." Ibid. The Court remanded the case for the State to provide a statement of reasons for its plea negotiation decision and for the trial court to determine whether that decision was arbitrary or capricious. Id. at 476.

A-1497-22

D.

It remains for us to apply the core principles and analytical framework embraced in <u>A.T.C.</u> to the matter before us. We note the <u>A.T.C.</u> Court had no occasion to address the constitutional implications of the graduated pre- versus post-indictment system that is at the heart of defendant's current challenge. In <u>A.T.C.</u>, the defendant was never indicted so the restriction placed on post-indictment plea offers in the Guidelines was never triggered.

We note that the Guidelines offer neither guidance nor limitations on a prosecutor's discretion on whether to tender a pre-indictment plea offer, even though that decision determines whether a prosecutor is foreclosed from offering the maximum sentence reduction allowed by the JLA. Furthermore, nothing in the current JLA plea negotiation framework expressly precludes a county prosecutor from adopting a formal or de facto county policy that prohibits or discourages pre-indictment plea offers in JLA cases. Any such local policy could lead to disparate sentencing practices since plea offers under such a policy would likely be tougher than offers made in counties that do not prohibit or discourage pre-indictment plea offers.

That said, we agree with the State that the Guidelines do not expressly "authorize prosecutors' offices to develop county-specific standards and procedures." <u>Id.</u> at 474. But that does not mean such county policies do not

exist, or that any such local custom or practice did not influence the exercise of prosecutorial discretion in this case.

We are mindful the A.T.C. Court "decline[d] to address defendant's uniformity argument, which was not asserted before the sentencing court or the Appellate Division, and is not supported by an adequate record."  Id. at 474 n.7.  The Court added:

> We also recognize the difficulty of comparing results across vicinages because the amount of the sentence reduction in a given case depends heavily on the victim's situation and interests.  That said, the Attorney General is free to review and enhance [S]ection 2 of the JLA Guidelines ("Amount of Reduction") to further channel the discretion of prosecutors across the State and avoid disparate results.
>
> [Ibid.]

Following the A.T.C. Court's lead, we decline to instruct the Attorney General to modify the JLA Guidelines to provide guidance on when prosecutors may withhold a pre-indictment plea offer.  Nor are we prepared to instruct the Attorney General to modify the JLA Guidelines to follow the Brimage Guidelines model by treating all initial plea offers as the functional equivalent of a pre-indictment offer, thereby sidestepping the "indictment penalty" at the heart of defendant's constitutional challenge.  Those policy determinations rest in the discretion of the Attorney General, who is, of course, "free to review and

32

enhance . . . the JLA Guidelines . . . to further channel the discretion of prosecutors across the State and avoid disparate results." Ibid.

Rather than require judicial surgery on the Guidelines, the Court in A.T.C. instead relied on a prosecutor's statement of reasons to address the constitutional concerns. Id. at 474-75. Such statements, the Court explained, permit meaningful judicial review of the exercise of prosecutor discretion and guard against arbitrary and capricious decisions. See id. at 475.

Building on that foundation, we apply the rationale of A.T.C. to require that when the initial JLA plea offer is made after indictment, thereby invoking the plea offer restriction codified in Section 3 of the Guidelines, the prosecutor's statement of reasons should explain the rationale for the timing of the plea offer or else demonstrate that the graduated plea provision had no impact on the sentence reduction authorized by the plea offer. We deem an explanation for why the prosecutor chose to automatically preclude a fifteen-year sentence to be an integral part of the statement of reasons required by A.T.C. for the decision to offer a prison term "between fifteen and twenty-five years." See ibid. Unless the statement establishes that the graduated plea provision had no impact on the sentence reduction, it should also include a representation on whether the timing of the plea offer was determined pursuant to a county policy, standard, or procedure.

33                                                              A-1497-22

For example, where applicable, a statement of reasons may include an explanation that, applying the relevant factors specified in the Guidelines, a fifteen-year sentence would be inappropriate in consideration of the interests of the victim, in which event the graduated plea provision would not have resulted in a less generous plea offer than the one determined in accordance with the other provisions of the Guidelines that were upheld in A.T.C. In that situation, the critical fact-sensitive question is whether the prosecutor determined the sentence reduction solely by considering the relevant factors and circumstances spelled out in Section 1 of the Guidelines, or whether that decision was influenced by the graduated plea provision. If the latter, the prosecutor must explain the reasons for the timing of the plea.

In sum, we deem an augmented statement of reasons to be adequate to permit meaningful judicial review, thus ensuring the constitutional application of the JLA and Guidelines. We are unpersuaded by defendant's remaining constitutional arguments.[6]

Accordingly, we remand for the PCR court to develop the factual record, Preciose, 129 N.J. at 462-63, by requiring the prosecutor to provide an explanation for the decision to withhold a pre-indictment plea offer in accordance with this

---

[6] To the extent we have not addressed them, any arguments raised by defendant with respect to the JLA or Guidelines lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

opinion. The PCR judge shall review the explanation provided by the prosecutor and determine whether the prosecutor's discretion was exercised in an arbitrary and capricious manner as to warrant further judicial relief. We offer no opinion on whether withholding a pre-indictment plea offer in this case was inappropriate, or whether defendant suffered any prejudice from that decision.

We leave to the PCR judge's discretion whether to convene an evidentiary hearing, see Vanness, 474 N.J. Super. at 623 (a PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion), or instead rely on a written statement of reasons to be provided by the prosecutor. We also leave to the PCR judge's discretion whether to require additional briefs or oral argument. The remand proceedings shall be completed within forty-five days of the issuance of this opinion.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

35