SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Delshon J. Taylor, Jr. (A-20-24) (089386)**

**Argued April 29, 2025 -- Decided August 6, 2025**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers which standard of review is applicable in reviewing a prosecutor's denial of a Graves Act waiver under N.J.S.A. 2C:43-6.2 -- abuse of discretion or patent and gross abuse of discretion.

In November 2017, officers responded to a report of shots fired and found defendant Delshon J. Taylor, Jr., walking in the area with two other men. When an officer approached defendant and told him that he would be frisked, defendant took off running. Two officers followed and saw defendant drop a handgun while running. Defendant was apprehended and charged with several offenses, including two that qualify as predicates under the Graves Act -- unlawful possession of a weapon and possession of a weapon for an unlawful purpose.

Defendant requested a waiver of the mandatory minimum sentence required under the Graves Act. In a letter, the State denied the request. Although the State recognized that defendant had no adult criminal convictions, it found that the matter fell within the class of gun possession cases that the Graves Act was intended to prevent. The State reiterated that the facts here were concerning: defendant concealed a semi-automatic handgun loaded with hollow point bullets and subsequently threw the handgun on the ground in public. The State concluded that because defendant "was noncompliant with the officers and his actions placed the officers and the individuals on-scene at risk of injury during this encounter . . . a Graves Act waiver is unwarranted."

In April 2021, defendant pled guilty to one count of second-degree unlawful possession of a weapon. At sentencing, the court found that the aggravating and mitigating factors were in equipoise. After the court inquired whether the State had changed its mind regarding imposing a lesser sentence for the period of parole ineligibility, defense counsel informed the court that prior to her representation, defendant had requested a Graves Act waiver, which the State denied. After the prosecutor submitted that he was not the one involved in the plea negotiations, the court postponed sentencing for greater explanation from the original prosecutor.

1

Defendant filed a motion to override the State's denial of the Graves Act waiver. At the rescheduled hearing, the judge stated that she found that "a prima facie case had been established by the defense" that the denial of the waiver was a patent abuse of discretion. Thus, the court explained, the burden shifted to the State to support its decision. Ultimately, the court did not find that the prosecutor's decision rose to the level of patent and gross abuse of discretion and sentenced defendant in accordance with the plea agreement.

On appeal, defendant argued that the trial court should have reviewed the State's decision for an abuse of discretion rather than a patent and gross abuse of discretion. The Appellate Division affirmed, finding no error in the trial court's ruling. The Court granted certification, limited to whether a prosecutor's denial of a Graves Act waiver is subject to the "patent and gross" abuse of discretion standard or the abuse of discretion standard. 259 N.J. 365 (2024).

**HELD:** The appropriate standard of review is abuse of discretion. As a result, the Court reverses the judgment of the Appellate Division and remands the case to the trial court for consideration of the prosecutor's denial under that standard.

1. The ordinary abuse of discretion standard reflects a generous deference to prosecutorial actions. A functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue, or whether the decision is instead an arbitrary, capricious, whimsical, or manifestly unreasonable judgment. In contrast, the patent and gross abuse of discretion standard has been categorized as "enhanced deference" or "extra deference." As the Court has defined the standard in the context of prosecutorial determinations about whether an individual should be prosecuted or be allowed to participate in the diversionary pretrial intervention (PTI) program, that heightened standard reflects a prosecutorial decision that has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention. Here, the Court considers whether denials of Graves Act waivers should be reviewed under the highly deferential "patent and gross abuse of discretion" standard commonly applied to PTI determinations or the ordinary abuse of discretion standard applied in non-PTI contexts. (pp. 12-14)

2. Despite arguments to the contrary, the appropriate standard of review for Graves Act waiver denials has not yet been decided by the Court. (pp. 14-17)

3. The Court explains why the patent and gross abuse of discretion standard has been applied in the PTI context while the ordinary abuse of discretion standard has been applied to evaluate other exercises of prosecutorial discretion. PTI is an alternative procedure to the traditional process of prosecuting criminal defendants. It is a diversionary program through which certain offenders are able to avoid

2

criminal prosecution by receiving early rehabilitative services expected to deter criminal behavior.  Thus, prosecutorial discretion in the PTI context is critical for two reasons.  First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, it is a primary purpose of PTI to augment, not diminish, the prosecutor's options.  In contrast, to review challenges to prosecutorial decisions relating to sentencing and punishment, the Court has applied the abuse of discretion standard.  Although that standard is deferential to the prosecutor's determination, it is not as deferential as the patent and gross abuse of discretion standard in recognition of the fact that, despite prosecutorial involvement in sentencing decisions, sentencing remains a judicial function.  The Court reviews key case law and notes that it distinguishes between prosecutorial discretion in the exercise of a traditionally judicial role, like sentencing, and prosecutorial discretion in an inherently executive function, like determining whether to pursue a conviction or PTI.  (pp. 17-24)

4.  The Court reviews the Graves Act, codified at N.J.S.A. 2C:43-6(c), and its waiver provision, N.J.S.A. 2C:43-6.2.  It is evident from the statutory text that Graves Act waivers relate to sentencing and are therefore not akin to PTI determinations.  The Court finds no reason to depart from the substantial body of precedent in which it has held that separation of powers principles require that courts be able to review prosecutorial determinations about sentencing -- an inherently judicial function -- for ordinary abuse of discretion.  In keeping with that precedent, review of a denial of a Graves Act waiver under N.J.S.A. 2C:43-6.2, moving forward, will be for ordinary abuse of discretion.  The Court reinforces that this standard is nonetheless deferential.  (pp. 24-27)

      **REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-20 September Term 2024
### 089386

State of New Jersey,

Plaintiff-Respondent,

v.

Delshon J. Taylor Jr.,
a/k/a Taylor Delshon,
and DJ,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 29, 2025 | August 6, 2025 |

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

Matthew M. Bingham, Assistant Prosecutor, argued the cause for respondent (Kristin J. Telsey, Salem County Prosecutor, attorney; Matthew M. Bingham, on the briefs).

Ezra D. Rosenberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Ezra D. Rosenberg and Jeanne LoCicero, on the brief).

1

Remi L. Spencer argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Remi L. Spencer, on the brief).

Amanda G. Schwartz, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Paul H. Heinzel, Deputy Attorney General, of counsel and on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case we address which standard of review is applicable in reviewing a prosecutor's denial of a Graves Act waiver under N.J.S.A. 2C:43-6.2 -- abuse of discretion or patent and gross abuse of discretion.

This appeal arises from defendant Delshon Taylor, Jr.'s guilty plea to one count of second-degree unlawful possession of a weapon, an offense subject to the Graves Act. Under the Act, persons convicted of certain enumerated offenses relating to the possession of a firearm are subject to mandatory minimum terms of imprisonment, fixed at one half of an individual's sentence or 42 months, whichever is greater. N.J.S.A. 2C:43-6(c). During that time, the defendant shall be ineligible for parole. However, the Graves Act includes a waiver provision known as an "escape valve," which permits the prosecutor to move or consent to reduce the mandatory minimum term of imprisonment to one year.

2

Defendant requested a waiver of the mandatory minimum sentence required under the Graves Act, but that request was denied by the State. Upon a hearing on defendant's motion to override the State's denial, the court determined that defendant needed to establish that the prosecutor's denial was a "patent and gross abuse of discretion." Finding that defendant failed to meet that burden, the court upheld the waiver denial.

On appeal, defendant argued that the trial court applied the incorrect standard of review and should have reviewed the State's denial under an ordinary abuse of discretion standard. The Appellate Division affirmed the finding of the trial court, relying on State v. Benjamin, 228 N.J. 358 (2017), and State v. Rodriguez, 466 N.J. Super. 71 (App. Div. 2021).

We now hold that the appropriate standard of review is abuse of discretion. As a result, we reverse the judgment of the Appellate Division and remand the case to the trial court for consideration of the prosecutor's denial under that standard.

I.

A.

We derive the facts throughout this opinion from the pretrial record.

On November 15, 2017, a police officer quickly responded to a report that shots were fired near South Broad Street in the Borough of Penns Grove.

3

Upon arriving at the scene, the officer noticed a car approach three men walking in the area, including defendant. The officer parked across the street and walked toward them. After calling for backup, the officer informed the men that they were being detained because they were the only people present in the area after gunshots were reported. The men responded that they heard the gunshots but the shots sounded like they came from a few blocks away. At some point after the officer approached, the driver of the vehicle near the three men attempted to drive off. A sheriff's officer who responded to the call for backup pursued the vehicle that attempted to leave the scene.

More officers soon arrived. As an officer approached him, defendant began pacing and stated that he did not do anything or have anything on him. The officer continued to approach defendant and informed him that he needed to be frisked for the safety of the officers. In response, defendant took off running. Two of the officers pursued defendant. They observed him reach into his waistband and then drop a black handgun onto the ground while running. While in pursuit and attempting to reach out and grab defendant, one of the officers lost his footing and fell to the ground. Another officer was able to recover the handgun and apprehend defendant. About 10 minutes had passed from the time the gunshots were heard to when defendant was apprehended.

4

Defendant was charged by indictment with second-degree unlawful possession of a weapon; second-degree possession of a weapon for an unlawful purpose; fourth-degree obstructing the administration of law; fourth-degree tampering with physical evidence; and fourth-degree possession of prohibited devices (hollow point bullets).  Two of these offenses qualify as predicates under the Graves Act -- unlawful possession of a weapon and possession of a weapon for an unlawful purpose.

B.

Defendant moved to suppress the handgun.  After a series of hearings and an appeal, the court ultimately denied defendant's motion.

Defendant then requested a waiver of the mandatory minimum sentence required under the Graves Act.  In a letter, the State denied the request, explaining that the factors in defendant's case weighed against agreeing to a waiver.  Although the State recognized that defendant had no adult criminal convictions, it found that the matter fell within the class of gun possession cases that the Graves Act was intended to prevent.  The State reiterated that the facts here were concerning:  defendant concealed a semi-automatic handgun loaded with hollow point bullets and subsequently threw the handgun on the ground in public.  The State concluded that because defendant "was noncompliant with the officers and his actions placed the officers and the

5

individuals on-scene at risk of injury during this encounter (and causing an injury to one of the officers), a Graves Act waiver is unwarranted."

On April 26, 2021, defendant pled guilty to one count of second-degree unlawful possession of a weapon, resulting in the dismissal of the remaining counts of the indictment. Pursuant to defendant's plea agreement, the recommended sentence was five years in prison, three and half to be served before defendant was eligible for parole. Two months later, defendant entered a plea to a subsequent, unrelated charge of resisting arrest in the fourth degree, with a recommended sentence of 18 months to run concurrent to the sentence for the handgun charges.

At sentencing, the court found that the aggravating and mitigating factors were in equipoise. After the court inquired whether the State had changed its mind regarding imposing a lesser sentence for the period of parole ineligibility, defense counsel informed the court that prior to her representation, defendant had requested a Graves Act waiver, which the State denied. After the prosecutor submitted that he was not the one involved in the plea negotiations, the court postponed sentencing for greater explanation from the prosecutor who handled the matter at the outset.

On July 23, 2021, defendant filed a motion to override the State's denial of the Graves Act waiver. Defendant submitted a letter brief in support of his

motion, arguing that "[t]he State's refusal to move for a Graves waiver in this matter was both arbitrary and capricious and begs to be overridden by the Court." Defendant additionally asserted that a 2008 Attorney General directive pertaining to Graves Act waivers creates a presumption in favor of a waiver for a one-year parole disqualifier, unless certain circumstances are present. In a supplemental brief, defendant urged that the recommended sentence did not serve the interests of justice and that the prosecutor's denial of the waiver was a patent and gross abuse of discretion.

At the rescheduled hearing, the judge stated, regarding the denial of the Graves Act waiver, that she found at the last hearing that "a prima facie case had been established by the defense" that the denial of the waiver was a patent abuse of discretion. Thus, the court explained, the burden shifted to the State to support its decision. To that end, the court had sent counsel cases in which waivers were granted, asking the State to explain why waivers were granted in those cases but not this one. The court noted that the prosecutor maintained that defendant in this case posed a risk of danger to the community when he discarded the gun, but the court found that assertion "to be purely speculative."

The trial judge further stated, "State v. Rodriguez tells us that the standard [of] review is patent and gross abuse of discretion and this requires the Court to view the Prosecutor's decision through the filter of the highly

7

deferential standard of review." The court found that the mitigating factors outweighed the aggravating factors and that "this case is no worse than some of the cases . . . cited where a waiver was granted." Although the trial judge stated that her "conscience tells [her] that a five, do three [and] a half years, is the wrong sentence for this defendant," she concluded that if she were to impose the sentence she thought was appropriate, she would be improperly substituting her judgment for that of the prosecutor's office. Ultimately, she did not find that the prosecutor's decision rose to the level of patent and gross abuse of discretion. As a result, the trial court sentenced defendant in accordance with the plea agreement to five years' imprisonment with three-and-a-half years' parole ineligibility.

C.

On appeal, defendant argued that the trial court applied the wrong standard in reviewing the denial of a Graves Act waiver and should have reviewed the State's decision for an abuse of discretion rather than a patent and gross abuse of discretion.

The Appellate Division affirmed, finding no error in the trial court's ruling because the trial court properly applied great deference to the prosecutor's denial and did not substitute its own judgment. Citing this Court's opinion in Benjamin and the Appellate Division's decision in

8

Rodriguez, the court found that "precedential case law establishes patent and gross abuse [of] discretion as the appropriate standard."

We granted defendant's petition for certification, limited to whether a prosecutor's denial of a Graves Act waiver is subject to the "patent and gross" abuse of discretion standard or the abuse of discretion standard. 259 N.J. 365 (2024). We also granted leave to appear as friends of the court to the Association of Criminal Defense Lawyers of New Jersey (ACDL), the American Civil Liberties Union of New Jersey (ACLU), and the Attorney General.

## II.

### A.

Defendant argues that this Court has never considered the appropriate standard of review on a denial of a Graves Act waiver, and that the appropriate standard is ordinary abuse of discretion. Defendant asserts that the patent and gross abuse of discretion standard is implemented in the pretrial intervention (PTI) context to avoid separation of powers concerns due to the fundamental prosecutorial nature of diversion and charging decisions. Defendant contends that because of the unique nature of PTI, this Court has rejected the application of the patent and gross abuse of discretion standard to prosecutorial decisions in other contexts, instead mandating judicial review for ordinary abuse of

9

discretion, especially in the framework of sentencing decisions. Because the prosecutor's authority to waive the Graves Act's mandatory parole disqualifier impacts a defendant's sentence, defendant argues that the appropriate standard of review is ordinary abuse of discretion.

Amicus curiae ACDL argues that neither this Court nor the Appellate Division has resolved the issue of which standard of review is applicable in this context. The ACDL points out that the trial court's reliance on Benjamin and Rodriguez was mistaken because those cases did not purport to resolve the standard of review and instead relied on previous cases. The ACDL asserts that because sentencing is an inherently judicial function, the appropriate standard in this context is abuse of discretion -- the same standard that this Court has applied "in all cases implicating review of prosecutors' sentencing recommendations."

The ACLU reiterates defendant's argument that the patent and gross abuse of discretion standard has been limited to a prosecutor's charging discretion in the context of PTI. The ACLU further argues that because the Graves Act waiver is primarily a judicial sentencing decision rather than prosecutorial charging decision, it should be subject to an abuse of discretion standard of review.

B.

The State asserts that although the prosecutor's decision is subject to judicial review, our courts have consistently held that the standard of review is patent and gross abuse of discretion, citing State v. Alvarez, 246 N.J. Super. 137 (App. Div. 1991); State v. Watson, 346 N.J. Super. 521 (App. Div. 2002); State v. Benjamin, 442 N.J. Super. 258 (App. Div. 2015), aff'd as modified, 228 N.J. 358 (2017); State v. Andrews, 464 N.J. Super. 111 (App. Div. 2020); and Rodriguez. The State contends that the trial court appropriately applied that standard in upholding the waiver denial.

The Attorney General argues that the application of the patent and gross abuse of discretion standard when reviewing Graves Act waiver decisions has been settled precedent for the last 34 years. The Attorney General requests that if stare decisis is overcome, this Court should clarify that the abuse of discretion standard is highly deferential to a prosecutor's judgment. Finally, the Attorney General argues that any changes made by this Court should be prospective because they pertain to the duration of parole ineligibility rather than truth-seeking or fact-finding, and all parties involved relied on the established standard.

11

III.

A.

At issue in this case is the appropriate standard of review for a prosecutor's denial of a Graves Act waiver -- "abuse of discretion" or "patent and gross abuse of discretion." Those standards are similar in kind but different in degree.

The ordinary abuse of discretion standard reflects "a generous deference to prosecutorial actions." State in re V.A., 212 N.J. 1, 22 (2012). Although we have found the standard to "def[y] precise definition," we have explained that it asks whether "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Service, 779 F.2d 1260, 1265 (7th Cir. 1985)). "In other words, a functional approach to abuse of discretion examines whether there are good reasons for an appellate court to defer to the particular decision at issue," or whether the decision is instead "'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'" Flagg, 171 N.J. at 571 (quoting Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)).

In the context of prosecutorial action, the Court has often equated the abuse of discretion standard with "arbitrary and capricious" action. In State v. Kirk, for example, we reviewed for abuse of discretion a prosecutor's decision not to waive the imposition of an extended-term sentence under the Comprehensive Drug Reform Act (CDRA). 145 N.J. 159, 165 (1996). We explained that "the prosecutor's application of the guidelines is reviewed by the sentencing court under an arbitrary and capricious standard. That judicial review protects defendants against prosecutorial abuse of discretion in the application of enhanced sentencing." Id. at 175 (citation omitted); see also State v. Bender, 80 N.J. 84, 93 (1979) ("Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.").

In contrast, the "patent and gross abuse of discretion standard" is "more than just an abuse of discretion as traditionally conceived." State in re V.A., 212 N.J. at 23. It "has been categorized as 'enhanced deference' or 'extra deference.'" State v. Nwobu, 139 N.J. 236, 246 (1995) (quoting State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993)).

As we have defined the standard in the context of prosecutorial determinations about whether an individual should be prosecuted or be allowed to participate in the diversionary PTI program, that heightened standard reflects "a prosecutorial decision that has gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." State in re V.A., 212 N.J. at 23 (internal quotation marks omitted) (quoting State v. Wallace, 146 N.J. 576, 582-83 (1996)). Indeed, "[i]n order for . . . an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention." Bender, 80 N.J. at 93.

This appeal requires us to determine whether denials of Graves Act waivers should be reviewed under the highly deferential "patent and gross abuse of discretion" standard commonly applied to PTI determinations or the ordinary abuse of discretion standard applied in non-PTI contexts.

B.

We begin by explaining that, contrary to the arguments advanced by the State and the Attorney General and the findings of the Appellate Division here, it is not settled law that the more deferential standard of "patent and gross abuse of discretion" applies in the Graves Act waiver context.

14

The Appellate Division relied heavily on our decision in <u>Benjamin</u>. But we did not determine the standard of review on a denial of a Graves Act waiver in that case. The main issue on appeal in <u>Benjamin</u> was whether a defendant had a discovery right to access the prosecutor's files in other cases in which a waiver had been granted. 228 N.J. at 360. To reach that question, we addressed whether there were sufficient safeguards in place, which required us to determine whether there was a standard of judicial review. <u>Id.</u> at 370-71. Although <u>Benjamin</u> cited prior Appellate Division decisions that articulated a standard of review, i.e. <u>Alvarez</u> and <u>Watson</u>, it did not engage in any analysis of the standard of review and no briefing was submitted by the parties on the issue. <u>Id.</u> at 372-73. The opinion confirmed that there were procedural safeguards in place, including meaningful judicial review, but it never reached an analysis of those safeguards. <u>See</u> <u>ibid.</u> Nowhere in the opinion did the Court assess the soundness of imposing a "patent and gross abuse of discretion" standard of review in these matters. <u>Andrews</u> quoted <u>Benjamin</u> for the principle that "defendants may 'appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor,'" 464 N.J. Super. at 120 (quoting <u>Benjamin</u>, 228 N.J. at 364); <u>accord</u> <u>Rodriguez</u>, 466 N.J. Super. at 97, but that passage in <u>Benjamin</u> is found within the procedural history and was a summary of the Appellate Division's

15

reasoning below, highlighting the appellate court's reliance on <u>Alvarez</u>; it was not a holding.

Thus, reliance on <u>Alvarez</u> for the alleged adoption of the patent and gross abuse of discretion standard for review of Graves Act waiver denials is questionable. First, the standard actually applied in <u>Alvarez</u> is less than clear. The only time "patent and gross abuse of discretion" is mentioned follows the court's conclusion that N.J.S.A. 2C:43-6.2 is constitutional because "the Assignment Judge has the ultimate authority to decide whether the prosecutor arbitrarily or unconstitutionally discriminated against a defendant." <u>Alvarez</u>, 246 N.J. Super. at 147. In a footnote following that conclusion, the court distinguished that review "from an automatic right to review of each prosecutorial decision on a challenge for 'patent and gross abuse' of the prosecutor's discretion." <u>Id.</u> at 147 n.6. And the opinion later phrased the standard differently, noting that the burden rests on the defendant to "make a showing of arbitrariness constituting an unconstitutional discrimination or denial of equal protection constituting a 'manifest injustice'" to demonstrate a hearing on the contested denial is necessary. <u>Id.</u> at 148.

Furthermore, <u>Alvarez</u> relied in part on <u>State v. Cengiz</u>, 241 N.J. Super. 482 (App. Div. 1990), which discussed prosecutorial discretion in CDRA cases. 246 N.J. Super. at 146-47. Subsequent cases, however, have clarified

16

that the appropriate standard for reviewing the exercise of prosecutorial

discretion in CDRA cases is the ordinary abuse of discretion standard.  See

Vasquez, 129 N.J. 189, 196-97 (1992); Kirk, 145 N.J. at 175.  The Appellate

Division even noted that evolution in Watson when addressing the denial of a

Graves Act waiver, but it simply found in that case that neither party suggested

that Alvarez was no longer prudent and therefore evaluated the denial at issue

under the Alvarez standard.  Watson, 346 N.J. Super. at 535.

For those reasons, we do not find Alvarez or the decisions that relied on

it persuasive in establishing the standard of review for Graves Act waiver

denials.  Indeed, we find that the appropriate standard of review remains

undecided by this Court.

C.

To answer that question, we must consider (1) why the patent and gross

abuse of discretion standard has been applied in the PTI context while the

ordinary abuse of discretion standard has been applied to evaluate other

exercises of prosecutorial discretion, and (2) whether a prosecutor's decision

to grant or deny a waiver under the Graves Act is more like a prosecutor's

decision as to PTI, which would suggest that the patent and gross abuse of

discretion standard would be appropriate, or more like other exercises of

17

prosecutorial discretion that have been reviewed under the ordinary abuse of discretion standard.

1.

The answer to the first question lies in the differing respective roles of the judicial and executive branches in the charging and sentencing processes.

As indicated above, even our definition of the patent and gross abuse of discretion standard for evaluating prosecutorial determinations is tied to the PTI context -- and for good reason:  PTI is "[a]n alternative procedure to the traditional process of prosecuting criminal defendants.  It is a diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter criminal behavior."  Wallace, 146 N.J. at 581 (emphases added) (quoting Nwobu, 139 N.J. at 240).  Thus, "[p]rosecutorial discretion in [the PTI] context is critical for two reasons.  First, because it is the fundamental responsibility of the prosecutor to decide whom to prosecute, and second, it is a primary purpose of PTI to augment, not diminish, the prosecutor's options." Nwobu, 139 N.J. at 246 (quoting Kraft, 265 N.J. Super. at 111).

Indeed, although we found that "judicial review is consistent with applicable principles under the separation of powers doctrine" in State v. Leonardis, we simultaneously expressed "the opinion that the scope of such

18

review should be limited" and that a defendant should therefore have to "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of his discretion" in order for a court to overturn that decision. 73 N.J. 360, 381-82 (1977); accord State v. Dalglish, 86 N.J. 503, 508 (1981) (finding that standard remained appropriate following the passage of the statutory PTI program pursuant to N.J.S.A. 2C:3-12); Wallace, 146 N.J. at 582 (further confirming the appropriate standard of review and acknowledging that "the prosecutor has great discretion in selecting whom to prosecute and whom to divert to an alternative program, such as PTI").

In contrast, to review challenges to prosecutorial decisions relating to sentencing and punishment, this Court has applied the abuse of discretion standard. Although that standard is deferential to the prosecutor's determination, it is not as deferential as the patent and gross abuse of discretion standard in recognition of the fact that, despite prosecutorial involvement in sentencing decisions, "[s]entencing remains a judicial function." State v. Howard, 110 N.J. 113, 123 (1988); see also Breeden v. N.J. Dep't of Corr., 132 N.J. 457, 469 (1993) ("Sentencing is a uniquely judicial function."); State v. McCrary, 97 N.J. 132, 139 (1984) ("Under the New Jersey Constitution 'judicial power' is vested in this Court and all inferior courts.

19

That power has been construed as the repository of the judicial authority to fashion remedies. In no context is this judicial power to fashion remedies more appropriately exercised than in a criminal case." (citations omitted)).

The distinction is evident in Flagg, in which we considered the appropriate standard for determining whether the prosecutor has properly declined to seek a waiver of forfeiture of public employment. 171 N.J. at 565, 571-72. Summarizing both standards of review -- abuse of discretion and patent and gross abuse of discretion -- the Court explained that "an abuse of discretion would be the more appropriate standard" because "the discretionary decision whether or not to seek a waiver is dissimilar to those determinations typically made by prosecutors in their law enforcement capacity, and is more akin to prosecutorial discretion in sentencing-related determinations." Id. at 571. The Court then concluded that "[u]nlike PTI matters, forfeiture of future public employment is not a typical prosecutorial decision but rather a consequence of certain convictions. Therefore, applying the heightened-deferential standard of patent and gross abuse of discretion is unnecessary and inappropriate." Id. at 572.

We also focused on the distinction between traditionally prosecutorial decisions like pursuing a conviction or allowing PTI and prosecutorial determinations relevant to typically judicial functions in State v. Lagares, 127

20

N.J. 20 (1992). In <u>Lagares</u>, the Court evaluated the constitutionality of N.J.S.A. 2C:43-6(f) -- the repeat offender sentencing provision of the CDRA. 127 N.J. at 23. That provision empowered the prosecutor to apply for an extended term of imprisonment, but the statute itself did not impose guidelines on the prosecutor's discretion. <u>Ibid.</u> Acknowledging the separation of powers doctrine and the interconnected roles our three branches of government play in the criminal justice system, we observed that, "[a]lthough sentencing discretion is shared to some extent among the three branches of government, the determination of the sentence is committed to the discretion of the judiciary." <u>Id.</u> at 27-28. We therefore found the ordinary abuse of discretion standard appropriate, holding that "an extended term may be denied or vacated where defendant has established that the prosecutor's decision to seek the enhanced sentence was an arbitrary and capricious exercise of prosecutorial discretion." <u>Id.</u> at 33. To facilitate that review, we requested that the Attorney General adopt appropriate guidelines and required prosecutors to state on the record the reasons for seeking the extended sentence. <u>Id.</u> at 32.

We emphasized in <u>Lagares</u> "that the burden on defendant to prove that a prosecutor's decision to deny leniency constituted an arbitrary and capricious exercise of discretion is heavy," and that the standard would "preserve the separation of powers and carry forward the legislative intent to vest the

executive with some influence in the sentencing of repeat offenders" while simultaneously leaving "intact" the "judicial authority to prevent arbitrary decision-making." Id. at 33.

We reached a similar holding in Vasquez, in which we addressed "whether on resentencing following a violation of probation the court is compelled by the sentencing statute to impose the period of parole ineligibility and whether the prosecutor, having originally waived the parole disqualifier, has the authority at resentencing to demand the imposition of the period of parole ineligibility." 129 N.J. at 192. Once again addressing contentions of a separation of powers violation due to the expansive nature of the prosecutorial discretion involved, the Court determined that the issue in Vasquez was similar to that in Lagares, and that the same ordinary abuse of discretion standard therefore applied: "[a]s in the case with section 6f, [N.J.S.A. 2C:35-12] vests sentencing power in the prosecutor. Judicial oversight is mandated to protect against arbitrary and capricious prosecutorial decisions. . . . A defendant who shows clearly and convincingly that the exercise of [prosecutorial] discretion was arbitrary and capricious would be entitled to relief." Id. at 196. The Court found that "[s]o interpreted, [N.J.S.A. 2C:35-12] does not violate the doctrine of separation of powers." Id. at 197. Noting that there existed "prosecutorial guidelines for [a] section 12 waiver of [the] parole disqualifier,"

22

we determined, as we did in <u>Lagares</u>, that "the prosecutor should state on the record the reasons for the decision to waive or the refusal to waive a parole disqualifier" in order to facilitate judicial review. <u>Id.</u> at 196.

And we recently applied similar considerations in <u>State v. A.T.C.</u>, in which we reviewed a facial constitutional challenge to the Jessica Lunsford Act (JLA) premised on a separation of powers argument. 239 N.J. 450, 455 (2019). The JLA imposes a particular term of incarceration with a period of parole ineligibility on offenders convicted of an aggravated sexual assault in which the victim is less than 13 years old, N.J.S.A. 2C:14-2(a)(1), and provides the prosecutor with discretion to waive the mandatory minimum and offer a negotiated plea instead. Looking to <u>Lagares</u> and <u>Vasquez</u>, we distilled three core principles that guide our resolution of "separation of powers challenges to statutes granting sentencing discretion to prosecutors": (1) the promulgation of uniform guidelines by the Attorney General to channel prosecutorial discretion; (2) a requirement that the prosecutor document the reasons for an exercise of discretion; and (3) oversight by the sentencing court "to ensure that prosecutorial discretion is not exercised in an arbitrary and capricious manner." <u>Id.</u> at 473-74.

In applying those three core principles, we found that there was no violation of the separation of powers regarding the JLA as long as the State

23

presented a statement of reasons for departing from the minimum sentence and the courts possessed the authority to review the State's exercise of discretion and protect against any arbitrary and capricious action. Id. at 476.

Our case law thus distinguishes between prosecutorial discretion in the exercise of a traditionally judicial role, like sentencing, and prosecutorial discretion in an inherently executive function, like determining whether to pursue a conviction or PTI. Although we apply a deferential standard of review in the first situation to further the legislative aims of according the prosecutor a greater role in the sentencing process in certain contexts, we apply an even more deferential standard to prosecutorial determinations in quintessentially executive functions. And to decide which standard applies in a particular context, we consider the nature of the prosecutorial action at issue.

2.

With those principles in mind, we now turn to the proper standard of review when the State has denied a Graves Act waiver.

The Graves Act, codified at N.J.S.A. 2C:43-6(c), "makes the use or possession of a firearm during the commission, attempted commission, or flight from the commission of certain designated offenses a sentencing factor that triggers the imposition of a mandatory term of imprisonment." Benjamin, 228 N.J. at 367 (quoting State v. Franklin, 184 N.J. 516, 529 (2005)).

24

Under the Graves Act, as currently amended, persons convicted of certain enumerated offenses relating to gun possession

> shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at one-half of the sentence imposed by the court or 42 months, whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole.
>
> [N.J.S.A. 2C:43-6(c).]

Initially passed in 1981 to address certain firearms offenses, see State v. Nance, 228 N.J. 378, 390 (2017), the Graves Act has since been expanded. In 1989, the Legislature enacted N.J.S.A. 2C:43-6.2, see L. 1989, c. 53, § 1, which provides a procedure that allows for a Graves Act waiver known as an "escape valve":

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under [the Graves Act] for a defendant who has not previously been convicted of [a Graves Act] offense . . . does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to [N.J.S.A. 2C:43-2(b)(2)] or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole. The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.

25

Thus, under the escape valve there are two avenues of relief: (1) the prosecutor moves for a waiver because the mandatory term does not serve the interests of justice; or (2) "the sentencing judge refers the matter to the assignment judge if the prosecutor approves the referral" and if the judge believes the mandatory term does not serve the interests of justice. Benjamin, 228 N.J. at 368. Notably, under either avenue, "the prosecutor must approve the waiver before the assignment judge or his or her designee imposes one of the two reduced penalties." Ibid.

It is evident from the statutory text that Graves Act waivers relate to sentencing and are therefore not akin to PTI determinations. We find no reason to depart from the substantial body of precedent in which we have held that separation of powers principles require that courts be able to review prosecutorial determinations about sentencing -- an inherently judicial function -- for ordinary abuse of discretion. See Flagg, 171 N.J. at 570-71; Lagares, 127 N.J. at 27-28; Vasquez, 129 N.J. at 196-97; A.T.C., 239 N.J. at 473-74. In keeping with our precedent, we hold today that review of a denial of a Graves

Act waiver under N.J.S.A. 2C:43-6.2, moving forward, will be for ordinary abuse of discretion.[1]

Although we hold that abuse of discretion is the proper standard of review, we reinforce that this standard is nonetheless deferential. It imposes a "heavy" burden on defendants, and defendants must "show clearly and convincingly that a prosecutor abused his or her discretion in order to secure relief." State in re V.A., 212 N.J. at 25-26; see also Lagares, 127 N.J at 33; Vasquez, 129 N.J. at 196. Assignment judges must not substitute their judgment for that of the prosecutor. See State in re V.A., 212 N.J. at 8 ("An abuse of discretion review does not allow the court to substitute its judgment for that of the prosecutor.").

---

[1] We note that the additional core principles identified in A.T.C. -- the promulgation of guidelines by the Attorney General and required statements of reasons to facilitate judicial review, see 239 N.J. at 473-74 -- are already in place for Graves Act waiver decisions. In 2008, the Attorney General issued a Directive "to ensure statewide uniformity in the exercise of prosecutorial discretion in implementing N.J.S.A. 2C:43-6.2." Directive to Ensure Uniform Enforcement of the "Graves Act" 10 (amended Nov. 25, 2008). In addition to providing that guidance, the Directive mandates that a prosecuting agency "document in the case file its analysis of all of the relevant aggravating and mitigating circumstances" and requires the prosecuting agency to keep a copy of its case-specific memorializations in a separate cumulative file to facilitate audits the Attorney General may direct. Id. at 13-14. In 2017, we further required prosecutors to provide defendants with a statement of reasons when denying waivers. Benjamin, 228 N.J. at 361.

V.

For the forgoing reasons, we reverse the Appellate Division's judgment and remand the matter for the trial court to consider the waiver denial under the abuse of discretion standard.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.